(No. 13227.—Judgment affirmed.)

THE PEOPLE ex rel. Frank C. Weber et al. Appellants, vs.
Carl J. Atkins et al. Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 9, 1920.*

1. MUNICIPAL CORPORATIONS—*authority over streets and alleys must be exercised for benefit of public.* The power of a city council to lay out, open, alter and vacate streets and alleys is not arbitrary or absolute but must be exercised for the use and benefit of the public.

2. SAME—*public street or alley cannot be given away or vacated solely for private use.* If the sole purpose and effect of the vacation of a street or alley are to give away the public right or to dispose of it solely for private rights or benefits, it is the duty of the courts, if their authority is properly invoked, to declare the act beyond the power delegated unless the conditions are such as to amount to an equitable estoppel.

3. SAME—*what determines whether vacation of street or alley is within power of municipality.* The power of a municipality to alter or vacate a street or alley is not to be determined solely by the facts, if such appear, that the fee will remain in the city or will pass to the original dedicator or to the petitioner or that the petitioner will be benefited while other private persons may suffer some loss, but it is the result of the action upon public interests that the court may inquire into and consider in determining the legality of the vacation ordinance.

4. SAME—*what parol evidence is admissible to determine the legality of an ordinance.* Parol evidence as to the nature and effect of an ordinance is admissible to determine the power of the council to pass the ordinance but not for the purpose of inquiring into the motives of the members of the council.

5. SAME—*when vacation ordinance is illegal.* Where the records of the city council show that the intention of the council in vacating a street or alley is solely to confer rights and privileges upon private persons, or where from all the evidence it appears that the purpose or effect of the ordinance is to benefit private persons only, the vacation ordinance must be held illegal as beyond the power of the council.

6. SAME—*what evidence is admissible to determine legality of ordinance vacating street or alley.* To determine the legality of an ordinance altering or vacating a street or alley as being for the interest of the public, it is proper to put in evidence the position, size and condition of the alley both before and after the vacation

or alteration and all evidence tending to show the result of the alteration or vacation upon both public and private interests, but no evidence is competent which bears directly upon the question of the motive of the council in passing the ordinance.

7. SAME—*when ordinance vacating street or alley is within the power of city council.* If there is any substantial evidence in the record showing that the public interest will be better served by the passage of an ordinance vacating or altering a street or alley the finding of the court must be that the ordinance is legal and within the power of the council, no matter how much or how little private parties may be benefited thereby.

8. SAME—*court has no right to substitute its judgment for that of city council.* Where there is evidence in the record of a substantial character to sustain the legality of an ordinance, the court must uphold the ordinance and cannot substitute its judgment for that of the city council.

APPEAL from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

McMAHON, GRABER & ELWARD, for appellants.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellees Carl J. and Christina Atkins and Louis P. and Barbara Freund.

SAMUEL A. ETTELSON, Corporation Counsel, for other appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This action was a petition to the superior court of Cook county, on the relation of Frank C. Weber and other parties residing in the block in question, to require the city of Chicago and certain of its officers and others, as defendants, to cause the removal of obstructions from a certain alley in said block. An answer was filed by the city and its officers and a separate answer by the other individual defendants. Replications were filed, the cause was tried by the court without a jury, and judgment was entered by the court denying the relief asked and dismissing the petition.

The validity of an ordinance of the city of Chicago vacating 75 feet of that alley is involved, and the trial judge certified that public interest required that the appeal be to this court.

The alley runs north and south through the center of block 4 in Kay's addition to Chicago, from West Forty-eighth street to West Forty-ninth street, and is 16 feet wide. South Ashland avenue is on the west side of the block and Justine street is on the east side. There are forty-eight lots in the block, one-half fronting on the east side of Ashland avenue and one-half on the west side of Justine street, all running back to the alley, with a depth of 121 feet. They are numbered consecutively, beginning at the north end of the block on Ashland avenue from 1 to 24 and beginning on the south end on Justine street from 25 to 48. All are 25 feet wide except lots 1 and 48 on the north end of the block and lots 24 and 25 on the south end, which are 24 feet wide. Kay's addition to Chicago was platted in 1876 and block 4 was re-subdivided in 1879, and the alley in question was thereafter a public thoroughfare until 1919. Carl J. Atkins, Christina Atkins, Louis P. Freund and Barbara Freund are the owners of the north 149 feet of the block except lots 1 and 2 on the northwest corner, being lots 3, 4 and 5 west of the alley and lots 43 to 48, inclusive, east of the alley. On lots 3, 4 and 5, fronting on Ashland avenue, they have a four-story brick building, in which Carl J. Atkins and Louis P. Freund conduct a department store. Ashland avenue is a business street. Justine street is occupied by residences. The appellants, who are the relators, are the owners of other lots in the block, some fronting on Ashland avenue and some on Justine street. Atkins and Freund carried on a large business in their property and in connection with it made such use of the alley in receiving and delivering goods at the rear of their store that it frequently became very crowded and the use of it by the public was thus very much interfered with. The alley extends

only from Forty-seventh street to Forty-ninth street. It was unpaved and generally littered with ashes and refuse. It was used by the occupants of the property abutting on it for receiving and delivering goods and for the delivery of coal. Because of the frequent congested condition of the alley at its north end, lot 43, which appellees owned, on the east side of the alley, just south of their store, was sometimes used for going into or out of the alley.

On May 26, 1919, an ordinance was passed vacating that part of the alley between lots 3, 4 and 5 on the west and lots 44, 45 and 46 on the east, reciting that the same was no longer required for public use and that the public interest will be subserved by such vacation. The vacation was made upon condition "that within sixty (60) days after the passage of this ordinance Carl J. Atkins and Louis Freund, or either of them, shall dedicate to the public and open up for public use as alleys all of lot forty-two (42) and the west twenty-four (24) feet of lots forty-seven (47) and forty-eight (48) in block four (4); * * * and further shall, within sixty (60) days after the passage of this ordinance, pay to the city of Chicago the sum of six hundred forty-nine and twenty one-hundredths dollars ($649.20) towards a fund for payment and satisfaction of any and all claims for damages which may arise from the vacation of the said part of said alley; and further shall, within sixty (60) days after the passage of this ordinance, deposit in the city treasury of the city of Chicago a sum sufficient to defray all costs of paving and curbing returns in the alleys herein dedicated, similar to the paving and curbing in West Forty-eighth street between Justine street and South Ashland avenue and in Justine street between West Forty-eighth street and West Forty-ninth street, the precise amount of the sum so deposited to be ascertained by the commissioner of public works after such investigation as may be requisite; and further shall, within sixty (60) days after the passage of this ordinance, file in the office of the city clerk of

the city of Chicago their bond in the penal sum of ten thousand dollars, ($10,000,) with surety or sureties to be approved by the mayor, conditioned to indemnify, keep and save harmless the city of Chicago against all liability, judgments, costs, damages and expenses which may in anywise come against said city in consequence of the passing of this ordinance, or which may accrue against, be charged to or recovered from said city from or by reason or on account of any act or thing done by the said Carl J. Atkins and Louis Freund by virtue of the authority granted in this ordinance." Section 3 provided that "this ordinance shall take effect and be in force from and after its passage, subject to the conditions of section two (2) hereof, provided said grantees shall, within sixty (60) days after the passage of this ordinance, file for record in the office of the recorder of deeds of Cook county, Illinois, a certified copy of this ordinance, together with a plat properly executed and acknowledged, showing the vacation and dedication herein provided for."

Within the sixty days mentioned in the ordinance Atkins and Freund complied with all its conditions. They purchased lot 42 at a cost of $2000 and dedicated it to the public as an alley to connect with the north and south alley, dedicated the portions of lots 47 and 48 specified, tore down a brick building that was on the west end of those lots and in use as a garage, and paid the sum of $649.20 mentioned in the ordinance and the sum estimated by the commissioner of public works to be sufficient to pay for the paving and curbing mentioned in the ordinance. They made plans to construct a building upon the vacated portions of the alley and upon lots 44, 45 and 46 immediately east of it, and in preparation for the construction of the building tore down and removed from those lots three frame buildings which had been used for residences. On October 3, 1919, they enclosed the vacated part of the alley with a board fence, which petitioners notified them on October 6 to re-

move, and on their failure to do so a petition for *mandamus* was filed on October 17.

There was considerable oral evidence offered to the court on the trial of this case as to the condition of this alley before and after the vacation of the 75-foot strip of the alley and as to the effect or result of the changed condition of the alley after the vacation aforesaid as to both public and private interests. This evidence shows without question that the alley was in bad condition in the south part of it at certain times by reason of ashes and other refuse being placed therein and by reason of its muddy condition at rainy seasons of the year. It was at all times, as aforesaid, so congested at the north end that there was much delay to the public in getting through the alley, and at times the police had to be called to clear the alley. Under the changed condition of the alley no such congestion or obstruction to travel has occurred. Every traveler thereon can pass through the alley, as it now exists, promptly and without delay. Every lot owner in that block has now as good facilities, or better, in receiving his coal or in receiving and carrying away his goods or other commodities from the alley. Under the changed condition that portion of the alley running into Justine street will be 25 feet wide and the alley at the north end will be 40 feet wide instead of 16 feet, and the returns in both of these dedicated portions will be paved the same as Justine street and Forty-eighth street and without cost to the city. The area vacated by the ordinance is 1200 square feet. The dedicated or added area is about 4200 square feet. The inconveniences proved or sought to be proved by the petitioners are, that the old alley was straight and a shorter route from Forty-eighth street to Forty-sixth street by the alley. By the expert testimony of two firemen it was proved that fire in the block could be fought to better advantage by firemen as the alley formerly existed. No reasons were given by these witnesses for their opinion. The evidence also tended to show

that Atkins and Freund would obtain, or had obtained, title to the strip vacated, and that their business would probably be much enlarged by extending their building from South Ashland avenue over the strip and to Justine street and that they would have much better facilities for receiving and disposing of their merchandise. This would necessarily be so, because it would give them more extensive quarters in which to do business and the benefit of Justine street for receiving and hauling away their merchandise in addition to an increased alleyway on the north. The evidence further disclosed that an effort to vacate said portion of the alley was made three years earlier, when an ordinance was presented to the city council June 12, 1916, that ordinance being similar in all respects to the ordinance in question. The passage of the earlier ordinance was defeated by protests of the other business men owning lots in said block, united with some of the residence owners. These protests were based upon the ground that such a vacation would largely benefit Atkins and Freund by enabling them to have an additional entrance to their business from the east, and give them a chance to "pull in trade that would and does legitimately come to Ashland avenue, which we property owners and merchants have spent years of time and thousands of dollars to develop." It was also further charged by the protesters that an elevated road was likely to come through that neighborhood in the near future and that the alley aforesaid was the logical place for the railroad to go through. On June 3, 1918, another ordinance was passed by the council granting permission to Atkins and Freund to construct, maintain and use a bridge or covered passageway across the alley and a vault under it. This last ordinance was apparently unobjectionable to any owners in the block but no action was ever taken under it.

The legislature has given to the councils of cities power to lay out, establish, open, alter, widen, extend and vacate streets and alleys. Such city councils exercise the powers

aforesaid and have the control of all public streets and alleys for the use and benefit of the public. The authority to exercise any ·one of the above given powers is not an arbitrary or absolute authority but is one to be exercised in the interest of the public. They cannot lay out a·street for any other than the public uses of the street. They can not give away by donation or vacate for private use a street or alley belonging to the public. If the sole purpose and effect of the vacation of a street or alley are to give away the public right or to dispose of it solely for private rights or benefits, it is the duty of the courts, if their authority is properly invoked, to declare the act beyond the power delegated unless the conditions are such as to amount to an equitable estoppel. (*Ligare* v. *City of Chicago,* 139 Ill. 46; *People* v. *Corn Products Co.* 286 id. 226; *People* v. *Benson,* 294 id. 236.) It will have no effect upon the power of a municipality to alter or vacate a street or alley if it appears·that by reason of such alteration or vacation the fee of the portion vacated remains in the city, reverts to the original dedicator, passes by operation of law to the adjoining owner, or that the same will become the property, by purchase, of some party or petitioner at whose request the municipality makes the alteration or vacation. The power of the municipality to make such alteration or vacation is not to be determined or affected merely by the fact, if such appears, that some individual is asking for such alteration or vacation and will be much benefited thereby, while other private persons may, on the other hand, suffer some loss to their business or property. Such matters merely go to the motive by which the act of vacation is performed, and the motive by which the legislative body is actuated is immaterial and cannot be inquired into. Cooley's Const. Lim. (6th ed.) 220; 1 Dillon on Mun. Corp. sec. 311; *Parker* v. *Catholic Bishop,* 146 Ill. 158; *City of Amboy* v. *Illinois Central Railroad Co.* 236 id. 236; *People* v. *Wieboldt,* 233 id. 572.

There is considerable discussion in the briefs in this case on the question whether or not parol evidence is admissible to determine if the city council acted within its powers. In the section above cited in Dillon on Municipal Corporations, and in note 4 thereto, the learned author, after stating the well settled rule that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws, states what we consider to be the true rule as to the admission of parol evidence, and that is, that the courts may hear and consider evidence as to the nature and effect of the laws or ordinances without any inquiry into the motives of the members of the council and determine the legality of the ordinances in question. The rule in this State is also well settled that where the records of the city council by their recitals show that the intention of the council in passing the ordinance was solely to confer rights and privileges upon private persons the ordinance so enacted will be declared illegal because not within the power of the council to pass it. It was also decided by this court in *People* v. *Corn Products Co. supra,* that in determining the question of the legality of an ordinance the court may, and should, inquire whether or not the purpose of the ordinance passed is one which lies within the power of the legislative body to carry out,—that is, whether the purpose of the ordinance is to serve a public benefit or a private use. This rule was expressed in almost the same language in *Ligare* v. *City of Chicago, supra.* The meaning of this expression was elaborated or explained in the case of *Smith* v. *McDowell,* 148 Ill. 51, where this court used this language: "But the purpose accomplished by the ordinance,—the object attained,— may always be considered, indeed must be, in determining the validity of the ordinance. If the purpose effected by the ordinance is within the power of the city council their act will be valid. The question to be determined is one of power in the municipality, in the determination of which

the legal effect of the action of the municipality becomes the controlling matter for consideration." It is made clear in that case that it is the result or effect of the action of the city council upon public interests that the court may inquire into and consider in determining the legality of the passage of such an ordinance by the city council.

Under the foregoing rules it was admissible to put in evidence the position, size and condition of the alley and how it served the public and the adjoining lot owners before the action of the city council and afterwards when completed and improved as provided by the ordinance. In fact, all evidence was proper which showed or tended to show that the alley after the alteration and vacation were completed would be more beneficial and more useful to the public in their use of it as a public alley, as well as all evidence, if any, that would show or tend to show that it would be of no use or of less use to the public as a public alley in its altered condition. So all evidence, if any, showing or tending to show that the alley in its altered condition would only benefit private parties owning lots in the block, and particularly those at whose instigation the alteration and vacation were made, is admissible. While all such evidence is admissible to show the result of the alteration or vacation of the alley,—that is, the effect that it would have upon both public and private interests,—yet no evidence would be competent which bore directly upon the question of the motive of the city council in the passage of the ordinance, such as statements made by members of the council with reference thereto or conversations between them and the parties at whose instance the ordinance was passed. If, when all such evidence is considered, it should appear that the purpose or effect of the ordinance is to benefit private persons, only, then the determination of the court must be that the ordinance is illegal. If, on the other hand, there is any substantial evidence in the record showing that the public interest will be better served by

the passage of the ordinance, then the finding of the court must be that the ordinance is legal and within the power of the council to pass it, no matter how much or how little private parties may be benefited by the same ordinance.

Under the foregoing rules we think it is clear that under the evidence before the court the city council had the authority and the power to make the alteration and vacation of the alley in question. There was evidence in the record showing clearly that such alteration and vacation were beneficial to the public. The alleyway as it now remains, although longer, is a much more commodious way for travelers and to users of it than it was in its former condition. The dedicated portions are much wider and will be well paved and curbed and will be less used and crowded by the business firm of Atkins & Freund. These benefits inure to the public not only in the use of the alley, but also from the further fact that such benefits come without cost and without liability to the city for any damages to private individuals by reason of the same. To offset these benefits appellants have made the showing that the alley in its former condition was shorter and a more direct way from Forty-eighth street to Forty-ninth street. They also have the expert opinions of two firemen that the fire department could handle a fire in that block better with the alley as it formerly existed, given without any explanation or reason. Time is everything in a large business center, and congestion and delay in traveling on streets or alleys is to be avoided at nearly any cost. We have no hesitancy in saying that, considered as an alley for the purposes of public travel and the other uses made of it, the alley in its present condition is much more desirable and much more beneficial to the public than the alley in its former condition. We are not impressed with the evidence that the public interest will suffer by an increased hazard or danger of fire in that block. At any rate, there is evidence in the record of a substantial character to sustain the ordinance in question,

and to hold otherwise would be substituting our judgment for the judgment of the city council, which we have no right or power to do.

The judgment of the lower court is affirmed.

*Judgment affirmed.*