JENS P. NIELSEN, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 21, 1928—Rehearing denied June 8, 1928.*

1. CONSTITUTIONAL LAW—*legislature may act upon any subject not prohibited by State or Federal constitution.* The State constitution is not a grant of but is a limitation upon the legislative power, and every subject within the scope of civil government

which is not limited or prohibited by the State or Federal constitution may be acted upon by the General Assembly.

2. MUNICIPAL CORPORATIONS—*the legislature has control over streets and alleys—vacation.* The legislature has supreme control over the streets and alleys of municipalities, which hold them in trust for all citizens of the State and not merely for local use, and, subject only to constitutional limitations, may vacate or discontinue streets or alleys and by general law confer such power upon the municipalities.

3. SAME—*what does not render the act of 1923 for vacation of streets and alleys invalid.* The act of June 30, 1923, revising the law in relation to the vacation of streets and alleys, does not, by authorizing the city council to make an agreement to receive compensation from property owners benefited by vacating a street or alley, delegate judicial functions to the city council.

4. STATUTES—*courts cannot question wisdom of statute.* The judiciary has no power to inquire whether the legislature acted wisely or not in enacting a particular law, but the authority of the courts is limited to an investigation of the question whether the statute is beyond the scope of the legislative power.

5. ACTIONS AND DEFENSES—*damages arising from vacation of a street do not authorize injunction.* Where property is damaged by the vacation of a street, the remedy is by an action at law and not by a suit for an injunction against the vacation.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

JOHN J. SONSTEBY, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, FRANK T. HUENING, CARL H. LUNDQUIST, SHERMAN C. SPITZER, CHRISTOPHER G. KINNEY, CHARLES F. GRIMES, DWIGHT S. BOBB, EDELSON, TANNENBAUM & POLIKOFF, EDGAR R. HART, and NELSON TROTTMAN, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Jens P. Nielsen filed a bill of complaint in the circuit court of Cook county against the city of Chicago; William E. Dever, mayor; Martin J. O'Brien, city comptroller; John

A. Cervenka, city treasurer; A. A. Sprague, commissioner of public works; Joseph F. Haas, registrar of deeds; the Kingdel Realty and Building Corporation; Meyer W. Lippman and Eva Lippman, his wife; the Chicago Title and Trust Company, as trustee; Dwight S. Bobb, as trustee; the Chicago and Northwestern Railway Company; Maurice B. Lippman; and Holmes, Pyott & Co. The prayer of the bill as amended was that the court (1) find that the city council of the city of Chicago had no power to vacate public streets and alleys for a compensation to be paid to the city; that the vacation of portions of particular streets by a certain ordinance was made for a private purpose and the ordinance is therefore void, and that the act of the General Assembly passed June 30, 1923, by authority of which the city council passed the vacation ordinance, is unconstitutional and void; (2) order that the city and its officers return the money paid the city as compensation for the purported vacation made by the ordinance and that the registrar cancel the registration of a certified copy of the ordinance; and (3) that the defendants be enjoined from removing fire hydrants, water mains, sewers, sidewalks and other improvements from the vacated streets, from laying sidewalks and constructing curbs across the entrances to such streets, and from improving a street to be dedicated; that the Kingdel Realty and Building Corporation, Meyer W. Lippman and Eva Lippman, his wife, Maurice B. Lippman, Holmes, Pyott & Co. and the Chicago and Northwestern Railway Company be enjoined from excavating in the streets so vacated and laying tracks therein, or, if such excavations have been made or such tracks laid, that they be commanded to remove the tracks and restore the streets to their former condition, and that the railway company be enjoined from switching cars from its right of way to and upon the tracks laid upon the streets purported to be vacated. Dwight S. Bobb, trustee, filed a disclaimer. All the other defendants answered the bill. Replications were filed

to the answers. The cause was referred to a master in chancery, who by his report recommended the dismissal of the bill for want of equity. Complainant's objections and exceptions to the master's report were overruled, the report was approved and confirmed, and the bill was dismissed for want of equity at the complainant's costs. From that decree the complainant prosecutes this appeal.

The ordinance of which Jens P. Nielsen, the appellant, complains, was passed by the city council of the city of Chicago on March 25, 1925, and was approved by the mayor on the same day. By this ordinance North Kenton avenue, between the south line of West Division street and the north line of Augusta street, and approximately the west half of Haddon avenue, of Thomas street and of Cortez street between the west line of North Kilbourn avenue and the east line of North Kenton avenue, were vacated upon condition that within six months after the passage of the ordinance the Kingdel Realty and Building Corporation would (1) dedicate to the public and open for public use a new street 33 feet wide and with its center line about 285.5 feet east of and parallel with the east line of North Kenton avenue; (2) pay to the city as compensation for the benefits which would accrue to the owner of the property abutting on the parts of the streets vacated, $14,936.96, which sum, in the judgment of the city council, equaled such benefits; (3) deposit in the city treasury a sum sufficient to defray the cost of laying a sidewalk and constructing a curb across the entrances to the parts of the streets vacated and of paving and constructing curbs at the entrances to the street to be dedicated, such cost to be ascertained by the commissioner of public works; and (4) file for record a certified copy of the ordinance, with a plat, properly executed, showing the vacations and dedication for which provision was made by the ordinance. The vacated portions of North Kenton avenue, Haddon avenue, Thomas street and Cortez street, and the street to be dedi-

cated, and their locations with reference to other streets and
property in the vicinity, are shown by the following plat:

The tracks of the Chicago and Northwestern railway
are laid upon an embankment which rises about ten feet

330—20

above the surface of adjoining property. North Kenton avenue, running north and south, lies immediately east of and adjoins the railroad right of way. This street is not ·open north of West Division street nor south of Augusta street. Haddon avenue, Thomas street and Cortez street, which run east and west and are parallel to each other, end at the railway embankment. The tract of land bounded on the north by West Division street, on the east by the street to be dedicated, on the south by Augusta street and on the west by the right of way of the railroad, includes all of the vacated streets. This tract is vacant and unimproved. It abounds in weeds, portions of it have been used as a dumping ground, and the streets shown within its boundaries are neither improved nor visible to the eye. Ashes and refuse have been dumped in North Kenton avenue to such an extent that at certain points ·its surface is from three to five feet above the level of the sidewalks on West Division and Augusta streets. These two streets and North Kilbourn avenue, the principal thoroughfares in the vicinity, are paved.

Traffic on West Division street passes through a subway under the tracks of the Chicago and Northwestern railway. If North Kenton avenue, which as laid out was 33 feet wide, were opened to public use, the embankment and retaining wall at the intersection of that street with West Division street would make it impossible for east-bound traffic on West Division street to observe the approach of north-bound traffic on North Kenton avenue until they came in contact with each other. A three-day test disclosed that an average of 185 street cars, 1417 trucks and 1621 other vehicles passed through the subway in both directions within eight hours of each day. Members of the city council who had investigated the matter testified that this point of danger could be eliminated by substituting for North Kenton avenue a new street about 300 feet east of the subway. By this change, they asserted, an approaching vehicle on one street could be observed by a driver on the other street.

Appellant owns lots 1 to 5, inclusive, lots 10 and 11, and lots 13 to 19, inclusive, in block 2, shown on the foregoing plat. Prior to the dedication of the new street, the alley running east and west in this block ended at the west line of lots 9 and 10. By the dedication lot 10, which appellant owns, becomes a corner lot, and the alley connects with the new street. No part of appellant's property abuts upon any of the vacated streets.

On July 1, 1922, the Kingdel Realty and Building Corporation, which was organized to acquire a parcel of land and to erect and operate a building thereon, acquired the title to the west half of blocks 2, 3, 6 and 7. There was no building on the real estate at the time and the corporation did not erect a building upon it. Subsequently, on April 15, 1925, after the vacation ordinance had been passed, the corporation, Henry J. Cohen and Lulu Cohen, his wife, and Maurice B. Lippman, conveyed the property to Meyer W. Lippman and Eva Lippman, his wife. These grantees shortly thereafter entered into an agreement with Holmes, Pyott & Co. whereby the latter agreed to purchase a part of the west half of block 2. On May 2, 1925, this purchaser and the Lippman Lumber Company made a contract with the Chicago and Northwestern Railway Company by which the railway company agreed to connect its tracks with the switch-track to be laid to the east of its right of way between West Division and Augusta streets. This connection was completed about June 22, 1925.

Within the period prescribed by the ordinance the sum fixed thereby as compensation for benefits was paid to the city, the sum ascertained by the commissioner of public works as sufficient to defray the cost of the improvements specified in the ordinance was deposited with the city, and certified copies of the ordinance and plats showing the streets vacated and the street dedicated were filed in the registrar's and recorder's offices.

The ordinance in question was passed pursuant to the act of the General Assembly entitled, "An act to revise the law in relation to the vacation of streets and alleys," as amended by the act of June 30, 1923. (Cahill's Stat. 1925, p. 2378; Smith's Stat. 1925, p. 2557.) Section 1 of this act as amended provides: "Whenever the city council of any city, or the board of trustees of any village or town, whether incorporated by special act or under any general law, or the council of any city or village operating under the commission or managerial form of government, shall determine that public interests will be subserved by vacating any street or alley, or part thereof, within their jurisdiction, they may by ordinance vacate such street or alley, or part thereof; provided that any such ordinance shall be passed by the affirmative vote of at least three-fourths of the members of such city council or of such board of trustees or of such council, authorized by law to be elected; such vote to be taken by ayes and noes and entered on the records of such council or board. Such corporate authorities, in behalf of any such city, town or village, may in such case contract for and receive from the owner or owners of property abutting upon such street or alley, or part thereof, so vacated, compensation in an amount which, in the judgment of such corporate authorities, shall be equal to the benefits which will accrue to the owner or owners of such abutting property by reason of such vacation. The validity of any such vacation shall not be questioned by reason of the payment of any such compensation, nor by reason of benefits specially accruing therefrom to the owner or owners of abutting property. The determination of such corporate authorities that the nature and extent of the public use or public interest to be subserved is such as to warrant the vacation of such street or alley, or part thereof, so vacated, shall be final and conclusive, and the passage of such ordinance shall be sufficient evidence of such determination,

whether so· recited in the ordinance or not. The relief to the public from further burden and responsibility of maintaining such street or alley, or part thereof, so vacated, shall constitute a public use or public interest authorizing such vacation. When property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law."

Appellant contends that because the act gives the corporate authorities of a municipality the right to contract for and to receive from the owners of property abutting upon a street or alley which it is proposed to vacate, compensation which in the judgment of the authorities will equal the benefits to accrue to such owners from the vacation, the act authorizes the corporate authorities to exercise judicial functions, in contravention of the constitution.

The State constitution is not a grant of but is a limitation upon the legislative power. All such power is vested in the General Assembly, subject to the limitations imposed by the State and Federal constitutions. Every subject within the scope of civil government which is not within some constitutional inhibition may be acted upon by the General Assembly. (*Sawyer* v. *City of Alton,* 3 Scam. 127; *Wilson* v. *Board of Trustees,* 133 Ill. 443; *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58; *Sutter* v. *People's Gas Light and Coke Co.* 284 id. 634; *Taylorville Sanitary District* v. *Winslow,* 317 id. 25.) The local municipality holds the streets and public ways within its limits in trust for all the citizens of the State and not merely for local use, and the legislature has supreme control over them unless restrained by constitutional limitation. (*Heppes Co.* v. *City of Chicago,* 260 Ill. 506.) Subject to such limitation the General Assembly, by virtue of its plenary power, may vacate or discontinue streets, and since it can act in such matters only through subordinate agencies, it must necessarily have the power, by a general law, to confer upon such agencies the power which it possesses in that respect. When such power

is exercised by the agency to which it is so delegated it is the exercise of the power of the General Assembly.

Whether a street shall be vacated is a legislative and not a judicial question. When the General Assembly, obeying constitutional limitations, confers power upon municipalities to vacate streets, that power may be exercised within the terms of the grant. The exercise of the power may be made conditional upon the payment of compensation by the owners of property abutting on the vacated street. *People v. City of Chicago,* 321 Ill. 466.

Appellant argues that the powers conferred by the Vacation act as amended will result in many and grave abuses. Experience may prove this charge to be true, but to avoid the evil consequences that may follow, the appeal should be made to the General Assembly and not to the courts. The judiciary has no power to inquire whether the legislature acted wisely or not, since the authority of the courts is limited to an investigation of the question whether a legislative act is beyond the scope of the legislative power. (*People v. City of Chicago, supra; Catholic Bishop of Chicago v. Village of Palos Park,* 286 Ill. 400.) The Supreme Court of the United States in *McCray* v. *United States,* 195 U. S. 27, said: "Whilst, as a result of our written constitution, it is axiomatic that the judicial department of the government is charged with the solemn duty of enforcing the constitution, and, therefore, in cases properly presented, of determining whether a given manifestation of authority has exceeded the power conferred by that instrument, no instance is afforded from the foundation of the government where an act which was within a power conferred was declared to be repugnant to the constitution because it appeared to the judicial mind that the particular exertion of constitutional power was either unwise or unjust. To announce such a principle would amount to declaring that in our constitutional system the judiciary was not only charged with the duty of upholding the constitution, but also with the re-

sponsibility of correcting every possible abuse arising from the exercise by the other departments of their conceded authority. So to hold would be to overthrow the entire distinction between the legislative, judicial and executive departments of the government, upon which our system is founded, and would be a mere act of judicial usurpation."

Appellant further contends that the evidence failed to show that the public interest was served by the vacation of the streets in question. For all practical purposes none of the vacated streets had any existence except upon the public records. They had been used in part as a dumping ground. They were not visible to the eye and were not available for public use. North Kenton avenue did not extend north of West Division street nor south of Augusta street. Haddon avenue, Thomas street and Cortez street were *culs-de-sac,* ending at the railway embankment. If North Kenton avenue should be opened for public travel its intersection with West Division street, by reason of the railway embankment and retaining wall, would make that point one of great danger to human life. The substitution of a street of equal width, a short distance to the east, not only eliminated this danger but made the property of appellant and other owners more accessible. The public safety was promoted and the city was relieved from the expense of maintaining the vacated streets and from liability for personal injuries and property damages which might arise out of their use. These are considerations which, in the public interest, justified the passage of the ordinance under the Vacation act prior to the amendments of June 30, 1923. *People* v. *Chicago, Burlington and Quincy Railroad Co.* 314 Ill. 445; *People* v. *Benson,* 294 id. 236.

Power to pass the ordinance here attacked was expressly conferred upon the city council by the General Assembly. If appellant's property has been damaged by the vacation of the streets in question, the act of June 30, 1923, pro-

vides that the damages shall be ascertained and paid as provided by law. The remedy is not by a suit for an injunction. *Hoerrmann* v. *Wabash Railway Co.* 309 Ill. 524.

The decree of the circuit court is affirmed.

*Decree affirmed.*