Frank J. Moskal, Appellant, v. Catholic Bishop of Chicago and City of Chicago, Appellees.

Gen. No. 42,177.

462

 Heard in the third division of this court for the first district at the April term, 1942. Opinion filed July 3, 1942.

BECKMAN, HEALY, REID & HOUGH, of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for certain appellee; WALTER C. SENNE, THOMAS F. SCULLY and JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

BARNET HODES, Corporation Counsel,.for certain other appellee; ALEXANDER J. RESA, EDWARD J. KELLY and JOHN J. MORTIMER, Assistant Corporation Counsel, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff's complaint prays for a decree to declare null and void an ordinance vacating a portion of an alley and to enjoin the erection of a church on the vacated portion of the alley. The court dismissed the complaint for want of equity after hearing before a master and argument on exceptions to his report. The City of Chicago, a municipal corporation, appellee herein, states that in the trial court this appellee interposed a defense based upon the proposition that the ordinance herein questioned is valid; that the law supporting this proposition is sufficiently brought to the attention of this court by the brief and argument filed herein by the appellee, Catholic Bishop of Chicago, a corporation sole; and that for this reason the appellee, City of Chicago, adopts the brief and argument for the appellee, Catholic Bishop of Chicago, upon that proposition and deems it unnecessary to file herein a separate brief and argument in support thereof.

The facts involved in this proceeding have to do with the vacation of part of an alley in the block in the City

of Chicago, bounded by 25th street, Keeler avenue, 25th place, and Kildare avenue. The alley extended from Keeler avenue west to Kildare avenue and is midway between 25th street and 25th place; its width 16.8 feet. Defendant owned the land at the corner of 25th street extending 131.242 feet westward from Keeler avenue, and a frontage of 125 feet on Keeler extending southward from 25th street to the alley. It also owned the land south of the alley to 25th place, with a frontage on Keeler avenue of 125 feet and a frontage on 25th place of 131.125 feet.

Immediately west of this 131.125 feet on 25th place is the property owned by plaintiff—a piece of ground with 51 feet frontage on 25th place on which is plaintiff's residence. The value of plaintiff's property was about $35,000.

At the request of defendant, the city council, on April 23, 1941, passed an ordinance vacating 115.25 feet of the east end of the alley and dedicating the west 16 feet of defendant's lot facing 25th place as a part of an alley in its place. This means that the whole of the east and west alley is closed from a point 115.25 feet west of Keeler avenue, thus shutting off ingress and egress to and from Keeler avenue. The dedicated 16-foot alley would run immediately alongside and the whole length of plaintiff's property and leave only ingress and egress to and from 25th place instead of from Keeler avenue.

Plaintiff states that this vacation ordinance was passed to enable defendant to build its church across the vacated portion of the alley, and that there was no other purpose; that an attempt was made to show that there was some benefit to the public, but that an examination of the evidence will disclose that the attempt failed; that, thus, defendant attempted to show that by cutting off access to Keeler avenue the public was benefited because, Keeler avenue being a stop street, there was danger in passing thereon from the alley; suggest that it is obvious that this is no public benefit, because if a

person wanted to drive on to Keeler avenue or across it, that same danger would be met wherever the crossing was attempted; that the danger would not be in driving from the alley, but it would be in turning into the street, and this danger would be present whether one drove into that street from the alley or from 25th place; that the closing of the alley and compelling eastbound traffic in the alley to turn south in the proposed 16-foot alley would bring the traffic into 25th place, but would not, by means of the alley, eliminate the danger of crossing Keeler avenue; and that the only difference would be that in one case the traffic would enter or cross Keeler avenue at the alley, in the other case at 25th place.

The defendant, Catholic Bishop of Chicago, a corporation sole, does not question the plaintiff's statement of facts, but questions his statement and contention that the public interest was not served in any manner by the vacation ordinance, and contends that the ordinance in question is valid and that the plaintiff is not entitled to injunctive relief. Defendant's theory is that the vacation of alleys is a legislative function within the discretion of a city council and that courts will not substitute their judgment for that of the city council unless it clearly appears that the vacation was made solely for private purposes, and that here the vacation of that portion of the alley in question was not *solely* for private purposes, but was for the benefit of the public.

It is urged, in favor of the validity of the ordinance, that the legislature, by statute (Ill. Rev. Stat. 1939, ch. 145, par. 1) has conferred upon cities the express power to vacate streets and alleys, the title to the vacated portions vesting in the abutting owners, unless the instrument of dedication expressly provides otherwise; that this statute has been held valid in *People v. City of Chicago,* 321 Ill. 466 and *Nielsen v. City of Chicago,* 330 Ill. 301. Section 1 of the above statutes provides:

"Whenever the city council of any city, or the board of trustees of any village or town, whether incorpo-

rated by special act or under any general law, or the council of any city or village operating under the commission or managerial form of government, shall determine that public interests will be subserved by vacating any street or alley, or part thereof, within their jurisdiction, they may by ordinance vacate such street or alley, or part thereof; provided that any such ordinance shall be passed by the affirmative vote of at least three-fourths of the members of such city council, or of such board of trustees or of such council, authorized by law to be elected; such vote to be taken by ayes and noes and entered on the records of such council or board. Such corporate authorities, in behalf of any such city, town or village, may in such case contract for and receive from the owner or owners of property abutting upon such street or alley, or part thereof, so vacated, compensation in an amount which, in the judgment of such corporate authorities, shall be equal to the benefits which will accrue to the owner or owners of such abutting property by reason of such vacation. The validity of any such vacation shall not be questioned by reason of the payment of any such compensation, nor by reason of benefits specially accruing therefrom to the owner or owners of abutting property. The determination of such corporate authorities that the nature and extent of the public use or public interest to be sub-served is such as to warrant the vacation of such street or alley, or part thereof, so vacated, shall be final and conclusive, and the passage of such ordinance shall be sufficient evidence of such determination, whether so recited in the ordinance or not. The relief to the public from further burden and responsibility of maintaining such street or alley, or part thereof, so vacated, shall constitute a public use or public interest authorizing such vacation. When property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law.'' Section 2 of this act vests the title to the vacated street or alley in the then abut-

ting owners, unless the instrument dedicating the street or alley expressly provides otherwise.

It appears that the ordinance in question was passed, pursuant to this statute, by the affirmative vote of three fourths of the members of the city council. The ordinance (vacating the east 115.25 feet of the alley) required the Catholic Bishop of Chicago, a corporation sole, within 60 days (1) to dedicate 16 feet of its property as a public alley, (2) to pay to the city the sum of $100, which sum in the judgment of the city council will equal the benefits accruing to the Catholic Bishop, and (3) to pay into the city treasury a sum sufficient to defray the costs of paving the entrances and fixing the curbing on both the old and new alleys. And it appears that the above conditions have been satisfied by the Catholic Bishop.

The preamble to the ordinance reads as follows:

"Whereas, the City Council of the City of Chicago, after due investigation and consideration, has determined that the nature and extent of the public use and the public interest to be subserved is such as to warrant the vacation of part of alley described in the following ordinance; therefore,

"Be it Ordained by the City Council of the City of Chicago": And the ordinance provides that the portion of the alley was vacated: "inasmuch as the same is no longer required for public use and the public interest will be subserved by such vacation." It appears to be well settled that whether a street or alley should be vacated is a legislative and not a judicial question. (*Nielsen v. City of Chicago,* 330 Ill. 301; *Hoerrmann v. Wabash Ry. Co.,* 309 Ill. 524.) And courts will not interfere with the discretion manifested by a city council in the exercise of its legislative power, except where that power is being exercised solely for private purposes (which it is urged is not the fact in this case). And it would appear further that an ordinance passed by a city council in the exercise of the legislative powers con-

ferred upon it for the purposes of police regulations or municipal government cannot be impeached by an inquiry into the motives of the members of the council who voted for it. If within the legislative power granted to the council, a court cannot declare an ordinance invalid on account of the improper motives which induced its passage. This question is not involved in the passage of this ordinance. Courts must assume that legislative discretion has been properly exercised. And the same rule applies in the case of the exercise of legislative power granted to a city council. (*Murphy v. Chicago, R. I. & P. Ry. Co.*, 247 Ill. 614; *People v. Atkins*, 295 Ill. 165; *People v. City of Chicago*, 321 Ill. 466; *Nielsen v. City of Chicago*, 330 Ill. 301; *People v. Wieboldt*, 233 Ill. 572.)

The defendant calls attention to the case of *People v. Wieboldt*, 233 Ill. 572,—a case in which the court refused to hold that it was an abuse of discretion to vacate a part of an alley lying between the ends of certain lots, thus permitting the owner to maintain one building covering all the lots and the vacated part of the alley, and to require the owner to dedicate two strips 16 feet wide, furnishing outlets for the alley, extending at right angles with the alley along the sides of the building, thus making not one, but two, "L" shaped alleys. The court there said:

"Whether it is expedient to vacate a street or alley is a question for legislative decision, and when the authority to discontinue is delegated to local officers and no restrictions are placed upon its exercise, the officers are invested with a very broad discretion, and unless their discretion has been abused the courts cannot interfere. This is in accordance with the general rule that where officers are invested with discretionary powers, courts will not substitute their judgment for that of the officers invested by law with the right to determine upon the necessity or expediency of doing a designated act. Elliott on Roads and Streets (2d ed.) sec. 879." Also,

in support of its position, the defendant cites the case of *People v. Benson*, 294 Ill. 236.

However, on the other hand, plaintiff contends that the city is without power to authorize a private person having property on both sides of a street or alley to erect a building or structure of any kind across the street or alley or to vacate the street or alley for the use and benefit of such person, and in support of his theory cites *Ginter-Wardein Co. v. City of Alton*, 370 Ill. 101. In that case the approach to a bridge across the Mississippi River was nearly in the center of Langdon street and occupied the whole of that street which was paved, except that along the east side of Langdon street there was room enough left for the passage of loaded trucks,— *i. e.* a space having width of about 10 feet between the bridge structure and the curb, while on the west side of the approach there was a space of only 6.8 feet, which was insufficient to permit trucks to pass. The appellant had a lumber yard on Front street and had always used, and found it most convenient to use, Langdon street for access to Broadway. Front street roughly paralleled Broadway and was one block south of Broadway. Broadway was an important street and if Langdon street was obstructed at Broadway, trucks delivering merchandise from appellant's place of business and the customers coming to that place of business could still go to and from Broadway, but only by traveling an inconvenient and round-about way. The Y. M. C. A. acquired the property east of Langdon street between Front street and Broadway and made an agreement with the Standard Oil Company for the erection of a filling station at Broadway and Langdon contingent on the City of Alton passing and sustaining an ordinance granting to the Y. M. C. A. the right to construct and maintain a concrete covered fill between its property on the east and the east line of the bridge entrance on the west and extending from the south line of Broadway. Appellant filed a complaint against the city and

the Y. M. C. A. to enjoin the enforcement of this ordinance and to prevent the obstruction of Langdon street. The decree of the lower court refusing the injunction was reversed and the cause was remanded with directions to grant a permanent injunction. The court stated that from the facts it was apparent that this was an effort on the part of the city to grant a part of a public street to a private corporation for private use and profit. The court then says:

"In this State, by statute and judicial decision, there has always been a firm public policy against such a procedure as has here been attempted, and it has always been held that a mere recital in an ordinance of supposed benefits to the City will not be conclusive on the Courts as to the true nature of the transaction." It is urged that the only difference between the *Ginter-Wardein Co.* case and the one at bar is that the *evidence* that the ordinance was passed for a private use and benefit is contained in the ordinance itself, while in the case at bar the *evidence* which shows this is *dehors* the ordinance. And it is urged that the latter evidence is just as admissible as the former; that if, in the case at bar, the ordinance recited that it was enacted for the purpose of authorizing the building of a church on the vacated alley, we would have precisely the same situation as in the *Ginter-Wardein Co.* case; that there is no rule of law which requires that the evidence be contained in the ordinance; and that the facts govern regardless of the recitals in the ordinance. The case of *People v. Corn Products Refining Co.*, 286 Ill. 226, is also relied upon by plaintiff. There the court held that a recital in an ordinance, permitting the erection of an overhead bridge and vacating the street, to the effect that it is passed for the benefit of the city, is not conclusive upon the courts, and while the courts will not inquire into the motives of the city council they may hear oral testimony as to the purpose of the ordinance and determine whether it is public or private. Plaintiff urges that in the case at bar,

as in the *Corn Products Refining Co.* case, defendant requested the city council to vacate the alley so that a structure could be built thereon; that in the case at bar the only ordinance is the vacation ordinance; that in the *Corn Products Refining Co.* case, there was a similar ordinance, plus one authorizing the structure; but that this does not change the situation, because it was the vacation ordinance that was held void; that the other ordinance was simply a permit to build, just as in the case at bar, even though the alley were vacated, the church cannot be built until a permit is obtained. It appears that a permit had not been secured to build the church, but that plans and specifications had been prepared.

The master heard the evidence in the instant case and made his report and the court overruled the exceptions filed thereto by the plaintiff. The court in doing so passed upon the questions contended for by the plaintiff.

In reply the defendant contends that the *Ginter-Wardein Co.* nor the *Gerstley v. Globe Wernicke Co.*, case, 340 Ill. 270, which were cited by plaintiff, involve vacation ordinances. In the *Ginter-Wardein Co.* case the court specifically stated that the ordinance in question was a contract ordinance and not a vacation ordinance, and that cases involving the power of cities vacating streets had no application. In the *Gerstley* case, too, it is pointed out, the court specifically stated that vacation ordinance cases did not apply. In addition, the *Corn Products Refining Co.* case and the *Gerstley* case dealt with overhead bridges which obstructed the air and light rightfully belonging to adjoining parties. It is urged that while it is true that in the *Corn Products Refining Co.* case a vacation ordinance was considered by the court, this was done solely because of the fact that it was passed for the purpose of vacating the street so that at the time when the overhead bridge was attacked it was then upon private property;

that the court considered the two ordinances (the one allowing the construction of the overhead bridge and the other vacating the street) and held that both were void.

In discussing the questions involved in the instant case, it is, of course, important to consider the admissibility of the evidence which was offered. In the case of *People v. Atkins,* 295 Ill. 165, the court said, in passing upon the kind and scope of the evidence admissible in a matter of this character, as follows:

''There is considerable discussion in the briefs in this case on the question whether or not parol evidence is admissible to determine if the city council acted within its powers. In the section above cited in Dillon on Municipal Corporations, and in note 4 thereto, the learned author, after stating the well settled rule that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws, states what we consider to be the true rule as to the admission of parol evidence, and that is, that the courts may hear and consider evidence as to the nature and effect of the laws or ordinances without any inquiry into the motives of the members of the council and determine the legality of the ordinances in question. The rule in this State is also well settled that where the records of the city council by their recitals show that the intention of the council in passing the ordinance was solely to confer rights and privileges upon private persons the ordinance so enacted will be declared illegal because not within the power of the council to pass it. It was also decided by this court in *People v. Corn Products Co.,* supra, that in determining the question of the legality of an ordinance the court may, and should, inquire whether or not the purpose of the ordinance passed is one which lies within the power of the legislative body to carry out,—that is, whether the purpose of the ordinance is to serve a public benefit or a private use. This rule was expressed in almost the

same language in *Ligare v. City of Chicago,* supra. The meaning of this expression was elaborated or explained in the case of *Smith v. McDowell,* 148 Ill. 51, where this court used this language; 'But the purpose accomplished by the ordinance,—the object attained,—may always be considered, indeed must be, in determining the validity of the ordinance. If the purpose effected by the ordinance is within the power of the city council their act will be valid. The question to be determined is one of power in the municipality, in the determination of which the legal effect of the action of the municipality becomes the controlling matter for consideration.' It is made clear in that case that it is the result or effect of the action of the city council upon public interests that the court may inquire into and consider in determining the legality of the passage of such an ordinance by the city council.

"Under the foregoing rules it was admissible to put in evidence the position, size and condition of the alley and how it served the public and the adjoining lot owners before the action of the city council and afterwards when completed and improved as provided by the ordinance. In fact, all evidence was proper which showed or tended to show that the alley after the alteration and vacation were completed would be more beneficial and more useful to the public in their use of it as a public alley, as well as all evidence, if any, that would show or tend to show that it would be of no use or of less use to the public as a public alley in its altered condition. So all evidence, if any, showing or tending to show that the alley in its altered condition would only benefit private parties owning lots in the block, and particularly those at whose instigation the alteration and vacation were made, is admissible. While all such evidence is admissible to show the result of the alteration or vacation of the alley—that is, the effect that it would have upon both public and private interest,—yet no evidence would be competent which bore directly upon the question of the

motive of the city council in the passage of the ordinance, such as statements made by members of the council with reference thereto or conversations between them and the parties at whose instance the ordinance was passed. . . .'' So, upon the questions that are before us, it would appear that the purpose or effect of the ordinance in question is not for the gratification of private interest solely, but that there is evidence that the public interest will be better served by the vacation as laid out by the provisions of the ordinance in question. It does not appear that plaintiff or other adjacent owners are deprived of the right of ingress or egress, and the changing of a straight alley into a right angle turn is not enough to require the court to invalidate the ordinance. (*People v. Benson,* 294 Ill. 236.)

The question of payment of damages is called to our attention by the plaintiff as a question which should be considered by this court as showing that the vacation ordinance was not in the public interest, but was in fact a detriment to the public. In any event the question of damages would seem to be one for the legislature, and the legislature by statute (Ill. Rev. Stat. 1939, ch. 145, par. 1), after empowering the city authorities to obtain compensation from abutting owners for the benefits received, specifically provided: ''When property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law.'' Thus the legislature in providing for the vacating of streets and alleys expressly recognized that while the vacation of a street or alley might benefit one and damage another, it was not necessary to require the one benefited to pay for the damage to the one harmed as a condition precedent to a showing that the ordinance subserved the public interest. It placed the determination of that question within the sphere of the city council's decision. It is urged further that plaintiff has made no showing that he has been damaged. The property for the new alley is coming from the Catholic Bishop

and not from the plaintiff. Neither is the plaintiff deprived of access to the rear of his lot. At the most he is merely inconvenienced, but this is not peculiar to him; it affects all the other property owners in the same manner. It further appears from the suggestions of defendant that plaintiff endeavored to make some showing that certain trees along the east boundary of his property would be damaged, especially a large tree at the corner of the proposed alley and his property; that the evidence, however, both oral and photographic, showed that this "large tree" was nothing more than a large stump of an old tree which had burned down somewhere between six and eleven years before; and that about one third of it is on plaintiff's lot. Therefore, from a consideration of the evidence in the record and an examination of the authorities cited, we are of the opinion that the evidence supports the conclusion of the court and that the order which was entered is affirmed by this record.

There is one further question which we might consider and that is as to whether plaintiff is estopped to question the vacation ordinance. Defendant urges that plaintiff is so estopped, and that such estoppel is based upon the fact that the city council by passing the ordinance has induced this defendant to dedicate a portion of its property to the city as an alley, and to pay to the city the sums of money required by the ordinance. Defendant cites in support of its theory the case of *People v. Wieboldt,* 233 Ill. 572, where the court said:

"We think, therefore, the court was correct in holding the power vested in the city council to vacate the portion of the alley now occupied by the building, in part, of Wieboldt was not so far abused as to make such vacation void. If, however, we were in doubt as to the power of the city council to vacate the portion of said alley vacated, we think the city council by the passage of said ordinance and the granting of the permit to Wieboldt to erect thereon a building connecting the two

buildings formerly owned by him, and by said action inducing Wieboldt to dedicate to the city a portion of lots 5 and 10 and to otherwise comply with the terms of said ordinance, has estopped itself to now evict Wieboldt from the possession of the portion of said alley vacated by the city council and now in the occupancy of Wieboldt by his building; . . ." Therefore, it would appear that the question is one which was considered by the trial court there and that the complaint was dismissed for want of equity.

After careful consideration, we believe, as we have stated before, that the court was justified in dismissing the complaint, and the decretal order is affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.