THE PEOPLE *ex rel.* Moritz Friend *et al.* Appellants, *vs.* WILLIAM A. WIEBOLDT *et al.* Appellees.

*Opinion filed April 23, 1908.*

1. MUNICIPAL CORPORATIONS—*courts will not substitute their judgment for that of officers vested with discretionary powers.* Whether it is expedient to vacate a street or alley is a question for legislative decision, and if the authority to vacate the same is delegated to municipal officers and no restrictions are placed upon its exercise, the officers are vested with a broad discretion, and unless their discretion is abused courts will not interfere.

2. SAME—*city has power to vacate alley though the adjoining owner becomes owner of the land.* If the municipal authorities, in the exercise of the discretion vested in them, determine that a public street or alley is no longer needed for public use, the city council has power to vacate the same, notwithstanding the portion vacated may become private property as a result of the ordinance.

3. SAME—*when ordinance vacating alley is not void.* An ordinance vacating a portion of an alley between lots owned by one person, who dedicates to the city portions of other lots on each side of the vacated strip, thus giving a right-angle outlet from the two inside ends of the alley to another street, is not such an abuse of the council's discretion as justifies holding the ordinance void, where other owners are not deprived of the use of the alley in the rear of their premises or of access to and from the streets.

4. SAME—*when principle of equitable estoppel applies.* Where a city has vacated a portion of an alley between lots owned by one person and has given him a permit to erect a building covering the

lots and the strip vacated, and such person has complied with the ordinance by dedicating other land for use as outlets from the alley to a street, has paid for paving the street and expended a large sum in erecting the building, both the city and property owners in the block are equitably estopped to demand that the original condition of the alley be restored.

FARMER and VICKERS, JJ., specially concurring.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

This was a petition for a writ of *mandamus*, filed on March 7, 1906, in the circuit court of Cook county, in the name of the People, upon the relation of Moritz Friend and Roesy Friend, against William A. Wieboldt, Carl Hansen, the city of Chicago and certain of its officers. Answers and replications were filed, and upon a trial by the court without a jury the prayer of the petition was denied and the petition dismissed at the cost of the relators, and the Appellate Court for the First District having affirmed the judgment of the circuit court, a further appeal has been prosecuted to this court.

The case was tried upon an agreed statement of facts, from which it appears that William A. Wieboldt, on the 20th of July, 1903, was the owner of lots 5, 6, 7, 8, 9 and 10, and lots 44, 45, 46, 47, 48, 49 and 50, and the relators were the owners of lots 54 and 55, in a block situated in the city of Chicago which was bounded by Milwaukee avenue, North Ashland avenue, Bauwans street and Elk street, and which block was intersected by an alley sixteen feet wide, running parallel with Milwaukee avenue and Bauwans street from Elk street to North Ashland avenue; that lots 5 to 10, inclusive, fronted on Bauwans street, and lots 44 to 50, inclusive, on Milwaukee avenue; that lots 5 to 10 are situated directly across said sixteen-foot alley from lots 45 to 50; that Wieboldt was the owner of a large building situated on

lots 6 and 7, fronting on Bauwans street, and another on
lots 44 to 50, fronting on Milwaukee avenue, in which build-
ings Wieboldt and Hansen carried on a department store;
that on July 20, 1903, the city council of the city of Chi-
cago, by a three-fourths majority vote, vacated the portion
of the alley between lots 6, 7, 8, 9 and part of lot 10, and
lots 49, 48, 47, 46 and part of lot 45; that the ordinance
of vacation provided that Wieboldt should accept the ordi-
nance within thirty days, and in consideration of the vaca-
tion of said alley, and in lieu thereof, he should dedicate for
public use the south-easterly sixteen feet of lot 5 and the
south-easterly sixteen feet of lot 10, and pay one-half of the
expense of paving, with brick, Bauwans street from North
Ashland avenue to Elk street, and pay to the city annually
$100, and give to the city a bond in the sum of $5000, con-
ditioned that he would carry out the provisions of said or-
dinance and keep the city harmless from any damages by
reason of the passage and enforcement of said ordinance.
Wieboldt accepted the ordinance and complied with its pro-
visions by dedicating to the city, for the use of the public,
those parts of lots 5 and 10 which the ordinance provided
should be dedicated, and the city accepted the same, and the
alleys so dedicated have since been used by the public.

In 1903, after the passage of said ordinance, the accept-
ance of the same by Wieboldt and the dedication of said
portions of said lots 5 and 10 to the city, Wieboldt, under
a permit issued to him by the city, constructed a large build-
ing on lots 8 and 9 and that portion of lot 10 not dedicated
as an alley and the portion of the alley vacated by said ordi-
nance, and thereby connected said new building with his old
buildings and made one continuous building, which building
has since been occupied by Wieboldt & Hansen, and which
new building cost Wieboldt $40,000. The present alley
affords access to the rear of every lot in the block except
those lots covered by said building as now constructed, the
only change in the accommodation of the property owners

of said block being, that to pass through the alley from Elk street to North Ashland avenue it is now necessary to follow the old alley to lot 5, then the new alley to Bauwans street, then Bauwans street to the entrance to the new alley on lot 10, then along the new alley to the old alley, and then along the old alley to North Ashland avenue.

The following plat shows the block of ground bounded by Milwaukee avenue, North Ashland avenue, Bauwans street and Elk street, and the sixteen-foot alley across said block, as originally platted. It also shows the location of relators' property, the Wieboldt property and the new alleys on lots 5 and 10, as they were in use by the public at the time the petition was filed:

WINSTON, LOWY & McGINN, (CHARLES F. LOWY, of counsel,) for appellants.

Loesch, Scofield & Loesch, for appellees William A. Wieboldt and Carl Hansen.

Clyde L. Day, and George W. Miller, (Edward J. Brundage, Corporation Counsel, of counsel,) for other appellees.

Mr. Chief Justice Hand delivered the opinion of the court:

The statute provides that the city council in cities, and the president and board of trustees in villages, shall have power to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, avenues, sidewalks, wharves, parks and public grounds, and vacate the same, (Hurd's Stat. 1905, chap. 24, art. 5, sec. 1, par. 7, p. 299,) provided no city council of any city or board of trustees of any village or town shall have the power to vacate or close any street or alley, or any part thereof, except upon a three-fourths majority vote of all the aldermen of the city or trustees of the village or town authorized by law to be elected, such vote to be taken by ayes and noes and entered on the record of the council or board, and where property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law. (Hurd's Stat. 1905, chap. 145, sec. 1, p. 2042.)

Whether it is expedient to vacate a street or alley is a question for legislative decision, and when the authority to discontinue is delegated to local officers and no restrictions are placed upon its exercise, the officers are invested with a very broad discretion, and unless their discretion has been abused the courts cannot interfere. This is in accordance with the general rule that where officers are invested with discretionary powers, courts will not substitute their judgment for that of the officers invested by law with the right to determine upon the necessity or expediency of doing a designated act. Elliott on Roads and Streets, (2d ed.) sec. 879.

The main contention of the appellants here is, that it appears that the alley in question was vacated by the city council solely for the benefit of Wieboldt, and that the ordinance vacating said alley, for that reason, is void, and reliance to sustain that position is largely placed upon the authority of *Ligare* v. *City of Chicago,* 139 Ill. 46, *Smith* v. *McDowell,* 148 id. 51, and *Field* v. *Barling,* 149 id. 556. In the *Ligare case* it was sought to condemn a strip of land for a street and then to dedicate the street to railroad purposes, and it was held that the property was being taken indirectly for a private purpose, which could not be done under the right of eminent domain; and in the *Smith case* the village of Chatsworth sought to vacate a strip in one of the business streets of said village, five feet wide and eighty-five feet long, adjoining a business block which Smith, the president of the board of trustees, proposed to construct adjoining Fourth street, in said town, and to donate said strip to Smith for an area-way to connect the street with the basement of said proposed building, and it was held that a portion of a public street could not thus be destroyed; and in the *Field case* Marshall Field & Co. sought to bridge the alley in the rear of their retail store, in the city of Chicago, so as to connect the two buildings upon either side of the alley, and it was held that to permit such use of the alley was an attempted dedication of the use of a part of said alley to a private purpose, which could not be done. The authorities above cited, however, recognize the fact that a municipal corporation, when the municipal authorities, in the exercise of the discretion reposed in them, determine that a public street or alley is no longer required for public use, have the right to vacate such street or alley; and such must necessarily be the rule in force in this State, or the power conferred upon such municipalities by the statute would be entirely abrogated.

In *Village of Hyde Park* v. *Dunham,* 85 Ill. 569, on page 577, the court said: "The corporate authorities of
233—37

Hyde Park are vested with complete control, as is every other municipal corporation, over its streets. They may contract or widen them whenever, in their opinion, the public good shall so require. Property owners purchase and hold subject to these powers, and they have no vested right to deny the widening, contracting or otherwise improving any street. The damage which they may sustain in consequence of the exercise of such powers, where their property is neither taken nor directly injured thereby, is too remote and contingent to be susceptible of accurate computation, and if for every such damage compensation must be made, public improvements will become so burdensome as to be beyond the capacity of municipal corporations to bear."

In *Meyer* v. *Village of Teutopolis*, 131 Ill. 552, which was approved in the *Smith case, supra,* it was expressly held that the legislature, in the absence of special constitutional restrictions, by virtue of its plenary power, may vacate or discontinue streets or highways or authorize municipal corporations to do so, and that under the authority of paragraph 7, article 5, of the general law relating to cities and villages, the village board or city council may, without any judicial determination, constitutionally order a vacation of a street, and that this power, when exercised with due regard to the rights of individuals, will not be restrained at the suit of the property owner claiming that he is interested in keeping open the streets. On page 555 of the opinion the court, speaking by Mr. Justice Bailey, said: "The village of Teutopolis is a municipal corporation organized under the general law in relation to cities and villages, and by paragraph 7, article 5, of that act the president and board of trustees of said village are given authority to vacate streets within the village. The plenary power of the legislature over streets and highways is such that it may, in the absence of special constitutional restrictions, vacate or discontinue them or invest municipal corporations with this authority. Without a judicial determination, a municipal

corporation, under the authority conferred by its charter to 'locate and establish streets and alleys, and to vacate the same,' may constitutionally order a vacation of a street; and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner claiming that he is interested in keeping open the streets dedicated to the public.—2 Dillon on Mun. Corp. sec. 666, and authorities cited in note."

In *Parker* v. *Catholic Bishop of Chicago,* 146 Ill. 158, the city council of the city of Chicago, by ordinance, vacated an alley which was situated, with reference to the property of the bishop, similarly to the alley in this case to the property of Wieboldt, and the vacation was sustained by the court. The court, on page 165, said: "The municipality holds the streets and alleys of the city in trust for the general public, and by the statute is given power to vacate the same whenever the public interest or convenience, in the exercise of a reasonable discretion, shall seem to such authority to require it.—Rev. Stat. par. 7, sec. 1, art. 5, chap. 24."

The relators in this case were not deprived of the use of the alley in the rear of their property or of access to and from the public streets of the city, and this court cannot say, as a matter of law, that the inconvenience to which they are put by the change made by the ordinance is such a clear abuse of the discretion vested in the city council as to justify this court in holding the ordinance void. Neither is the vacation of the alley affected by the fact that the portion of the alley vacated may, as a result of the action of the city council, have become the private property of Wieboldt. In the *Meyer case,* on page 556, it was said: "Nor can it be said that the validity of the proceedings by which a street is vacated is at all affected by the fact that the land embraced within the street thereby becomes private property. Nor is it material whether private ownership results from the rule that, upon the discontinuance of an easement in a

public highway, the freehold or soil reverts to the owner of the adjoining land or that such ownership is acquired by subsequent conveyance from the municipality. Nor does it seem material that the vacation is made with the view or intention of vesting the adjoining proprietors with the ownership of the land embraced within the street. That merely goes to the motive by which the act of vacation is performed, and in that, as in all legislative acts, the motives by which the legislative body is actuated are immaterial and cannot be inquired into.—Cooley's Const. Lim. (5th ed.) 222; Dillon on Mun. Corp. sec. 313." And in *Parker* v. *Catholic Bishop, supra,* on page 165: "It can make no difference, as to the power of the municipality, whether the fee remains in the city, reverts to the original dedicator or passes by operation of law to the adjoining owners; nor will the fact that the use of the alley or street passes to a private individual or corporation necessarily render it an exercise of power for a private and not for a public purpose."

We think, therefore, the court was correct in holding the power vested in the city council to vacate the portion of the alley now occupied by the building, in part, of Wieboldt was not so far abused as to make such vacation void. If, however, we were in doubt as to the power of the city council to vacate the portion of said alley vacated, we think the city council, by the passage of said ordinance and the granting of the permit to Wieboldt to erect thereon a building connecting the two buildings formerly owned by him, and by said action inducing Wieboldt to dedicate to the city a portion of lots 5 and 10 and to otherwise comply with the terms of said ordinance, has estopped itself to now evict Wieboldt from the possession of the portion of said alley vacated by the city council and now in the occupancy of Wieboldt by his building; (*City of Peoria* v. *Johnston,* 56 Ill. 45; *St. Louis, Alton and Terre Haute Railroad Co.* v. *City of Belleville,* 122 id. 376; *Village of Auburn* v. *Goodwin,* 128 id. 57; *City of Carlinville* v. *Castle,* 177 id. 105;

*People* v. *City of Rock Island,* 215 id. 488;) and if the city is estopped, such estoppel is binding upon the relators. *People* v. *Blocki,* 203 Ill. 363.

In the *Rock Island case,* on page 495, it was said: "It has frequently been decided that the doctrine of estoppel *in pais* is applicable to municipal corporations. * * * Where a party, acting in good faith under affirmative acts of a city, has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied. The hardships that would result from a contrary holding, and the necessity of raising an estoppel in particular cases to prevent fraud and injustice, have induced the establishment of the rule, and it has been several times said that there is neither danger to the public nor injustice in the application of the doctrine. In the exercise of proper diligence the public authorities may prevent encroachments upon public right, and if they do not, any citizen may take the necessary steps to do so, and if there is not only a failure to act by either, but affirmative action by the public authorities with the apparent approval of every one interested, under which the situation is changed and permanent improvements are made, the principles of equity require that the public should be estopped. The doctrine has been applied in *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25, *Chicago and Northwestern Railway Co.* v. *People ex rel.* 91 id. 251, *County of Piatt* v. *Goodell,* 97 id. 84, *Martel* v. *City of East St. Louis,* 94 id. 67, and *City of Chicago* v. *Union Stock Yards and Transit Co.* 164 id. 224." .

The right to the writ of *mandamus* is not an absolute one, and it should be issued or denied in a case like this, as the court may deem proper, in the exercise of a sound judicial discretion. The ordinance was an affirmative act by the city council of the city of Chicago vacating the portion of the alley now occupied by the building of Wieboldt,

under which ordinance the situation of the respondent Wieboldt and the conditions of the *locus in quo* have been materially changed. Permanent improvements have been made at a large expenditure of money, and money has been paid to the city and expended in paving a public street of the city, and property has been dedicated to the city by Wieboldt, relying upon the action of the city council, and to now deprive him of the rights secured by said ordinance would be a fraud upon him and would result in no particular benefit to the relators.

In view of all the facts disclosed by this record we are of the opinion the judgment of the Appellate Court affirming the judgment of the circuit court was right and that the judgment of the Appellate Court should be affirmed. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*

FARMER and VICKERS, JJ., specially concurring:

We concur in the affirmance of the judgment of the Appellate Court on the ground that appellants are now estopped to insist upon the vacation of the alley, but we do not concur in that portion of the opinion holding that the vacation was in the first instance a valid exercise of the power of the city council. The ordinance vacating the alley was passed for the purpose of permitting Wieboldt to erect a building on the ground vacated, to be occupied by him in the conduct of his own private business. The inducement for the vacation was the agreement of Wieboldt to pay one-half the expense of paving Bauwans street from North Ashland avenue to Elk street, and to pay the city, annually, $100. This court has repeatedly held that cities hold their streets and alleys in trust for the use and benefit of the public, and they have no power to vacate them for the purpose of devoting them to the exclusive use and benefit of a private person. *Smith* v. *McDowell,* 148 Ill. 51; *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289.