**WEAVER v. PENNSYLVANIA–OHIO POWER & LIGHT CO. et al.**

(Circuit Court of Appeals, Sixth Circuit. February 5, 1926.)

No. 4305.

1. **Courts ☞282(1)—Federal District Court has jurisdiction of suit to enjoin relocation of highway under bill charging unconstitutional use of power of eminent domain (Const. Ohio, art. 1, § 19; Const. U. S. Amends. 5, 14; Judicial Code, § 265 [Comp. St. § 1242]).**

Federal District Court has jurisdiction of suit to enjoin relocation of highway under bill charging collusion to use power of eminent domain, to take plaintiff's land for private purposes and without public necessity, in violation of Const. Ohio, art. 1, § 19, and Const. U. S. Amends. 5. 14; Judicial Code, § 265 (Comp. St. § 1242), not being applicable.

2. **Eminent domain ☞262(1).**

Action of local authorities in relocating highway will not be overthrown unless it is arbitrary and plain abuse of power of eminent domain.

3. **Eminent domain ☞300—Evidence held to sustain finding that relocation of highway was public necessity, and not result of collusion to use power of eminent domain for private purposes (Const. Ohio, art. 1, § 19; Const. U. S. Amends. 5, 14; Gen. Code Ohio, § 7214).**

Evidence *held* to sustain finding that relocation of highway to cross plaintiff's land was public necessity, and was not result of collusion between highway authorities and private interests, to use power of eminent domain for private purposes, in violation of Const. Ohio, art. 1, § 19, and Const. U. S. Amends, 5, 14, in view of Gen. Code Ohio, § 7214.

4. **Appeal and error ☞1012(1).**

District Court's conclusion that relocation of highway was not abuse of power should be accepted on appeal, unless evidence decidedly preponderates against it.

5. **Constitutional law ☞280—Eminent domain ☞61—That private interests benefited or defray expenses of relocating highway held not to affect validity of proceeding (Const. Ohio, art. 1, § 19; Const. U. S. Amends. 5, 14).**

That private interests are subserved, or that they defray in whole or part expenses of relocation of highway or other improvement, does not affect validity of proceedings, or show that land was taken for private interests. in violation of Const. Ohio, art. 1, § 19, and Const. U. S. Amends. 5, 14.

6. **Appeal and error ☞179(1).**

Procedural errors in relocating highway, not alleged in bill to restrain relocation, *held* not reviewable on appeal.

7. **Eminent domain ☞274.(1).**

Injunctive relief will not be granted for errors merely procedural in relocating highway.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit by Victor N. Weaver against the Pennsylvania-Ohio Power & Light Company and others. Decree for defendants, and plaintiff appeals. Affirmed.

Robert M. Hunter and Smith W. Bennett, both of Columbus, Ohio (Bennett, Westfall & Bennett, of Columbus, Ohio, on the brief), for appellant.

U. C. De Ford, of Youngstown, Ohio (Harrington, De Ford, Huxley & Smith, of Youngstown, Ohio, on the brief), for appellees.

Before DENISON, MOORMAN, and. KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The bill in this case seeks to enjoin the relocation of a portion of an intercounty highway known as the "Ohio River Road," in the vicinity of Toronto, Ohio, involving the taking of a strip across plaintiff appellant's land, against his contention that in such relocation the highway commissioners acted, not in the interest of public necessity, welfare, or convenience, but for the benefit of private interests only, and so in abuse of the power of eminent domain, and in violation of the Constitution of Ohio (article 1, § 19) and the Fifth and Fourteenth Amendments to the federal Constitution. The District Court rejected appellant's contention and dismissed the bill. This appeal is from that action.

The section of old road proposed to be relocated (about 3,400 feet in length) lay for the most of its length near the westerly bank of the Ohio river, and extended across the so-called Ball farm, the equitable title to which was in Republic Engineers, Inc. The traction company owned a right of way adjacent to and west of this strip of old road, thus crossing a part of the Ball farm. The line of the proposed relocated highway (at the place of greatest distance) lay about 975 feet westerly of the old line, and thus further from the river, and for a greater part of its length close to and parallel with (easterly of) the line of the Cleveland & Pittsburgh Division of. the Pennsylvania Railroad. Plaintiff's land (45 acres) lay between the north line of the Ball farm and the point to the north where the old and new lines intersected. For about 130 feet south of this latter point the relocated line crossed plaintiff's land as did the old highway line and the

traction line. The Railway & Light Company wished to build a power station near the north end of the Ball farm, east of the relocated highway, between the Pennsylvania Railroad and the river, and over and across the then existing highway which it was proposed to vacate.[1]

By written agreement of May 4, 1923, the Engineers Company agreed to convey to the commissioners of highways of Jefferson county, Ohio (or to the state of Ohio, or to such municipal corporation thereof as the commissioners should designate), a right of way 60 feet wide, with such additional width as should be required for slopes and fills, over and across the Ball farm, on the proposed relocated highway line (a distance of about 175 feet), reserving the right to cross this new right of way with a railway switch track near the northern limits of the farm, and reserving also the perpetual right and easement to locate and operate a double-track traction line (not exceeding 25 feet in width) on the easterly side of the right of way of the relocated road. The commissioners were to do all grading and excavating· necessary for the highway relocation (including all bridges and culverts made necessary by the change in location), and without expense to any of the other parties to the agreement. The commissioners also agreed that upon receiving conveyance of the right of way in question they would proceed with due diligence to acquire the necessary rights of way, and do all necessary things to relocate the highway according to the plans provided between plaintiff's north line and the southern limit of the proposed relocated highway. Upon the completion by the Railway & Light Company of the traction line, the trolley company was to abandon and convey to· the Railway & Light Company its existing traction line location on the old highway. When the relocation proceedings should be completed, authorized, and approved by the commissioner of highways of the state of Ohio, a bond given by the Railway & Light Company in the sum of $50,000 was to become effective and binding. This bond was conditioned for the acquisition and conveyance by the Railway & Light Company to the county commissioners, or their nominees, of the right of way provided for in the contract (not including the strip of plaintiff's land), and in the event of such relocation the removal and reconstruction by the Railway & Light Company of the traction line, as referred to, and

the expenditure (or the making and performance of valid contracts therefor) within 24 months from the relocation of said highway of not less than $1,000,000 toward the construction of a power plant on the Ball farm, between the railroad and the river.

Since the trial and disposition of the case in the District Court a double-track traction line has been laid upon the strip of plaintiff's land condemned by the county commissioners, upon which relocated line the traction company is operating cars. Adjacent to the tracks of that company a brick highway 19 feet wide has been laid, across the same strip of land, by the department of highways and public works of Ohio. A brick boiler house formerly on plaintiff's property. condemned by the county commissioners, has been torn down and removed in the construction of the relocated highway. Compensation for the strip so condemned was assessed at $5,000, which plaintiff refused to accept. A special assessment, amounting to $1,730, has been levied upon plaintiff's land for the improvement of the highway in question. The conditions of the bond referred to, given by the Railway & Light Company, have been complied with.

Upon the merits, the broad controlling question is whether the paramount reason for taking the plaintiff's land was the public interest, to which benefits to private interests were merely incidental, or whether, on the other hand, the private interests were paramount and controlling, and the public interests merely incidental.

[1] As the bill charges collusion between the highway authorities and private interests to use the power of eminent domain in taking plaintiff's land for private purposes, and without public necessity therefor, the District Court had jurisdiction, on elementary principles, to entertain bill for injunction. The case is wholly unlike National Quarries Co. v. Detroit, Toledo & Ironton R. Co., 10 F. (2d) 139, recently decided by this court. Nor does section 265 of the Judicial Code (Comp. St. § 1242) apply. Union Ry. Co. v. Illinois Cent. R. Co. (C. C. A. 6) 207 F. 745, 747, 125 C. C. A. 283.

[2, 3] Returning to the merits: We think the charge of lack of public necessity, welfare, or convenience, and of collusion in the employment of the power of eminent domain for private purposes, is not sustained by the record. To overthrow the action· of the highway authorities it must appear to have been arbitrary, and a plain abuse of power. Myles Salt Co. v. Iberia Drainage District,

---

[1] The power house as built seems not to have extended across the old vacated road line.

36 S. Ct. 204, 239 U. S. 478, 60 L. Ed. 392, L. R. A. 1918E, 190; United States v. Gettysburg Elec. Ry. Co., 16 S. Ct. 427, 160 U. S. at p. 680, 40 L. Ed. 576.

The District Judge, who heard in open court all the oral testimony given, after detailing the salient facts as in part reproduced in the margin hereof,[2] announced the conclusion that "it is obvious, * * * from the facts disclosed by the record, that the commissioners did not abuse their power in establishing a new road and vacating the old. A change had been in contemplation for some years. Both the state and county authorities deemed the change advisable. The road is the connecting link between two important highways. Its maintenance along the river bank would be more expensive than on higher ground, and result in more frequent interruption of travel from high water. By removal, sharpness of curves was reduced, the distance for which rapidly approaching vehicles could be seen was increased, and danger to travelers diminished. The elevation of the road was so increased, except at one point, as no longer to be subject to overflow. Travel will be increased and the consequences of erosion avoided."

[4] This conclusion should be accepted, unless the evidence decidedly preponderates against it. In re Snodgrass (C. C. A. 6) 209 F. 325, 326, 126 C. C. A. 251; Oehring v. Fox (C. C. A. 6) 272 F. 833, 836. Not only does the evidence not so preponderate, but we think the judge's conclusion amply sustained by the record.

The contract of May 4, 1923, was followed by appropriate official action. On that date the county commissioners passed a resolution that the "public interest requires a change in the location of the present improved road, plans of which are now on file with the department of highways and public works of the state of Ohio"; requested the (state) director of highways and public works to make the relocation in question, and that the portion of the old road in question be abandoned and vacated; directed that copy of the resolution be transmitted to the officer last referred to, with request that the application be acted upon before the original plans were returned to the board of county commissioners. This request was complied with on May 29, 1923, on presentation of the division engineer's report recommending the change of location. Meanwhile there were petitions of resident freeholders for the improvement in question, one of which was favorably acted upon by the county commissioners, after a bond by freeholders to protect the commissioners against the cost and expense in case the relocation proceedings failed had been approved. The commissioners sought to purchase at private sale a right of way across plaintiff's land, but he refused to sell unless at a prohibitive price. The county commissioners finally found unanimously that the proposed road was necessary, and that the public interests would be promoted by its establishment.

Plaintiff catalogues a long line of considerations thought to support his contention that the change in location was designed only to promote private interests, including the fact that the resolution of public interest was adopted on the same date as that of the contract, the recital in the freeholders' petition for relocation that they believed it to be a public benefit, because "in its present location it interferes with the erection of a new industrial plant," the language of the recitals of the contract, the absence of statute in Ohio requiring a bond such as that given by the Railway & Light Company (see, however,

[2] "The witness Ball, who is in his ninetieth year, and has always resided in the community, says he has seen the river overflow the road five or six times a year, thereby impeding travel, and that within the year preceding the trial of this cause the road was inundated several times. Ordinary high water in the river—i. e., a 40-foot stage—is regarded as an ordinary flood and submerges the highway, which is an 'ordinary old country road' that has never been improved. Tarr, who was county commissioner during the World War period, states the road had been traveled considerably, and would be of importance, if improved all through; it being a portion of what is now known as Intercounty Highway No. 7. Fawcett, division engineer of the state highway department, has known the road about five years, during which time he testifies the travel on it has not been very great, because it has not been fit for travel and has no north end outlet. It forms the shortest connecting link between the Lincoln Highway and the National Road, and, in Fawcett's judgment, would be one of the most heavily traveled roads in the state, if it were improved. * * * Ball states that, about the time of the recent war, there was talk of changing the location of the road; Tarr, that the commissioners, he being one of them, concluded that the road ought to be gotten out of the silt and muck, and that a straight road ought to be established through the Ball Farm and thus more distant from the river; and Fawcett, that in 1919, after an examination of the situation, he suggested the change of the road's location. Consideration of abandonment of the road and the location of another in its stead on higher ground adjacent to the right of way of the Cleveland & Pittsburgh Railway Company's track, which skirts the bluffs, continued, * * * " and the contract of May 4, 1923, hereinbefore mentioned, was made.

Parks v. Boston, 8 Pick. [Mass.] 218, 227, 19 Am. Dec. 322), the statement in an address by the power company's representative before the Toronto village council that the reason that it was necessary to move the road and car line back was to place the plant next to the river bank, etc., the alleged statement to plaintiff by the commissioners' representative that the motive in moving the road was to accommodate the power company, since they had to put the power station right against the river, and the public road was in their rear and had to be moved, as well as the fact of condemnation of a strip much wider than 60 feet (the county commissioners had power to appropriate land necessary for cuts and fills. G. C. O. § 7214).

[5] Careful consideration of these contentions, in connection with the entire record, including explanation or denial of at least one of the alleged statements mentioned, fails to convince us of the merit of plaintiff's ultimate contention that the action of the highway authorities was not in the public interest. The fact that the Railway & Light Company agreed to give the right of way across the Ball farm does not, of itself, affect the validity of the proceedings, nor does it show that plaintiff's land was taken for private interests only. The fact that private interests are also subserved, or even that such interests defray, in whole or in part, the expense of an improvement, does not take away the otherwise public nature of the improvement. Haff v. Fuller, 15 N. E. 479, 45 Ohio St. 495; McQuillin on Municipal Corporations, vol. 4, § 1864; Lewis on Eminent Domain, § 259; Glasgow v. St. Louis, 17 S. W. 743, 107 Mo. 198; Kean v. Elizabeth, 24 A. 495, 54 N. J. Law, 466; s. c., 26 A. 939, 55 N. J. Law, 337; Meyer v. Teutopolis, 23 N. E. 651, 131 Ill. 552; People v. Wieboldt, 84 N. E. 646, 233 Ill. 572; Tilly v. Mitchell, 98 N. W. 969, 121 Wis. 1, 105 Am. St. Rep. 1007; North Baptist Church v. Orange, 54 N. J. Law, 111, 22 A. 1004, 14 L. R. A. 62. In United States v. River Rouge Improvement Co., 285 F. 111, 113, 114, we recognized the common practice of congressional requirement, in case of channel improvements, that local interests furnish the right of way, the United States paying for the construction (excavation) expense.[3]

[6, 7] Certain alleged procedural errors are relied upon by plaintiff, but they are not al-

leged in the petition, and for that reason, if for no other, they are not open to consideration here. When the bill was filed, the criticized procedural steps had been taken. Indeed, it is the general rule that relief by injunction will not be granted on account of errors merely procedural. Haff v. Fuller, 15 N. E. 479, 45 Ohio St. 495; Lewis v. Laylin, 23 N. E. 288, 46 Ohio St. 663, 676; Ammon v. Horn, 126 N. E. 925, 99 Ohio St. 444. We are the better content with the application of these rules here from the fact that we are not impressed that, even if there was any substantial error in procedure, plaintiff has been prejudiced thereby, nor that he has suffered injustice from the commissioners' final action.

The decree of the District Court is accordingly affirmed.

---

[3] While the River Rouge decision was recently reversed by the Supreme Court on other grounds (46 S. Ct. 144, 269 U. S. —, 70 L. Ed. —), the propriety of the practice referred to was in no way discredited.