LOUIS E. GRUNTORAD ET AL., APPELLANTS, V. HUGHES BROTHERS, INC., A CORPORATION, ET AL., APPELLEES.

73 N. W. 2d 700

Filed December 9, 1955. No. 33764.

*William L. Walker* and *Earl Ludlam*, for appellants.

*Flansburg & Flansburg, Harry L. Norval, Paul H. Bek, J. W. Weingarten*, and *W. P. Loomis*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action in equity brought by appellants to enjoin and to compel the removal and abatement of a nuisance created, as they allege, by appellees' erecting dams, dikes, and obstructions and excavating a diversion ditch in the flood plane of the Big Blue River and thereby diverting floodwaters from the river and Bayou Creek from their natural course of drainage upon and over the land of appellants and to recover the damages they claim they have sustained as a result thereof.

The land owned by appellants is in the Big Blue River valley upstream from the city of Seward. It is described in detail in the record and its quite lengthy and involved description will not be repeated. The allegations made concerning P. H. Wiegardt, named as one of the appellees, are that he is the judge of the county court of Seward County and that he has the custody of the amount of the award in a condemnation proceeding by which there was appropriated a part of the land of appellants. There will be no further mention of him.

There are several causes of action alleged in the

amended petition of appellants none of which are separately stated and numbered. The causes of action for claimed loss of crops by water flooding small areas of the land of appellants in each of the years 1948 to 1951 inclusive and for the loss of personal property and damage to improvements on the land by the flood of June 1 and 2, 1951, were expressly excluded by the court from the adjudication from which this appeal is prosecuted and they are each preserved to appellants for trial in the district court. There are, therefore, none of these causes of action involved in this appeal.

The cause of action concerned in this appeal is one for injunctive relief in which claim is made by appellants for permanent damages caused by the existence and future maintenance of the flood control project around the city of Seward to the construction of which appellees consented, gave approval, and made contribution. It is described by appellants as an action "* * * in equity for abatement and removal of a nuisance created by defendants in placing dams, dikes, structures and obstructions in the flood plane of the Big Blue River and diverting Bayou Creek into Big Blue River * * *" and causing permanent, irreparable damage and detriment to the farm of appellants amounting to $100,000.

There are two legal defenses interposed by appellees to the claim of appellants for permanent damages and injunctive relief as follows:

1. That the flood control project, described at considerable length in the amended petition of appellants, which was completed in 1953 and because of which permanent damages are claimed, is a public project built according to the surveys and plans of the Corps of Engineers of the United States Army as authorized by the Federal Flood Control Act; that it was sponsored by the city of Seward; that the city obligated itself to secure rights-of-way for it; that the city would maintain the works when constructed and would save the government

of the United States harmless from any liability that might result from the construction and operation of the project; and that the purpose of it was to relieve a large area of the city from floods caused by the Big Blue River.

2. That the city of Seward had exercised the right of eminent domain granted it by the State of Nebraska and had by condemnation proceeding taken a part of the land of appellants for the construction of a diversion canal required as a part of the project and as a borrow pit for dirt necessary to erect and complete the dams and dikes of the project; that an award for damages to appellants was made in and as a part of the proceeding as provided and required by law; that the award had become final and was conclusive as to all damages for the land taken and all incidental and consequential damages which had or could result from the construction, continuance, or operation of the project; and that the condemnation proceeding and the award therein to appellants was res judicata of their claim made in this cause for damages to their land and property.

Appellants denied the allegations of fact made by appellees in presenting their defenses.

Appellees advised the court at the commencement of the trial of the cause that they had pleaded and had two legal defenses to the claim of appellants for permanent damages as stated in their amended petition which prevented liability of any of the appellees notwithstanding they approved, consented to, and contributed to the construction of the project complained of by appellants and even though the works of the project should cause flooding of their land. It was suggested to the court that it would be advantageous to have a ruling on the sufficiency of the legal defenses pleaded by appellees before doing the work and consuming the time inherent in producing evidence by appellants in an attempt to sustain their claim of permanent damages and their right to injunctive relief. Counsel for appellants thereupon offered and there was received on behalf of appel-

lants evidence establishing the facts claimed by appellees to be a bar to the granting of an injunction or to the recovery of permanent damages by appellants. The evidence introduced included the surveys, the reports, the maps, the plans, and the operation and maintenance manual of the Corps of Engineers of the United States Army for the flood control project in and around the city of Seward; resolutions of the city consisting of one sponsoring the project and another accepting it and obligating the city to maintain and operate it at the expense of the city; and the record of the condemnation proceeding referred to above and evidence of the fact that the award made to appellants had become final and that the amount thereof had been paid by the city to the county court of Seward County. The parties to the litigation by their statements and conduct invited and urged the court in that condition of the record to then accept a submission of the case to the extent of the alleged cause of action for permanent damages and for the abatement and removal of the nuisance as described and alleged by appellants in their amended petition. The court acceded to the desire and request of the parties. It found that appellees except the city of Seward were not liable for the existence and maintenance of the flood control project because it was a public one erected by virtue of an act of Congress and statutes of the state and was required to be continued and maintained by the city by its agreement with the government of the United States and the mandate of the act of Congress and the statutes; that the project could not be abated or enjoined; and that the award made in the condemnation proceeding had the effect of a final judgment; that it was res judicata of any claim of appellants for permanent damages caused by the existence or operation of the flood control project; and that it was a bar to the recovery by appellants of any permanent damages in this cause from any of the appellees. The court dismissed the case

as to the matters comprehended within the findings. This is an appeal from that action of the court.

The record indicates that persons affected by flood conditions that had occurred at Seward had made efforts in 1949 to interest the government of the United States and the Army Engineers in some undertaking to protect the inhabitants of the city from the results of such floods. In 1950 the first project report on the flood control project at Seward was made by the engineers. The city became the sponsor of it in June 1951 by a resolution of the city council providing the required assurances of local cooperation. These were: That the city would provide without cost to the United States all land, easements, and rights-of-way necessary for construction of the project; that the city would hold and save the United States free from damages due to the construction works; and that the city would maintain and operate all of the works upon completion in accordance with regulations prescribed by the Secretary of the Army. The last revision of the project report of the engineers was in May 1952. The plan of improvement in general was drainage and protection works consisting of an earth levee and appurtenant structures along the south, west, and north portions of the city, straightening a section of the Big Blue River immediately above the mouth of Lincoln Creek, and a diversion channel for drainage from Bayou Creek to the channel of the Big Blue River west of the county fair grounds. These are the works that were constructed as the flood control project at Seward with which this cause is concerned.

The purpose of the works was to protect about 105 acres of land of which 104 acres were within the city. There were 37 city blocks, 16 business and 74 residence properties, the municipal water works and swimming pool, and the Hughes Manufacturing Company to which protection was provided. This area was inundated in March 1949 and June 1951 and on numerous occasions

prior thereto. The benefits intended to result from the project were a reduction of flood losses to business and residential property, to public utilities, to municipal improvements, and the elimination of indirect losses such as business suspension. The flood control works for the city of Seward were built as planned and designed by the Corps of Engineers of the United States Army. A contribution of the federal government of $147,200 was made to defray a part of the costs and the balance of the estimated cost of $200,500 was required from local interests. It is true as appellants claim that Hughes Brothers granted, without compensation, easements for use in the construction of the project and that they and others contributed in various ways to its cost. The legislation authorizing a project of this character contemplates that local interests should satisfy much of its cost. The federal government is restricted to an expenditure for this purpose of not more than $150,000 in any single locality unless specifically otherwise authorized by Congress. 33 U. S. C. A., § 701s, p. 229. These facts did not make the project a private one. The court said in Weaver v. Pennsylvania-Ohio Power & Light Co., 10 F. 2d 759: "The fact that the Railway & Light Company agreed to give the right of way across the Ball farm does not, of itself, affect the validity of the proceedings, nor does it show that plaintiff's land was taken for private interests only. The fact that private interests are also subserved, or even that such interests defray, in whole or in part, the expense of an improvement, does not take away the otherwise public nature of the improvement."

In re Condemnations for Improvement of Rouge River, 266 F. 105, uses this language: "The mere fact that the taking of property for a public use will result in greater benefit to some persons than to others, or that private individuals contribute to the expense of such taking, does not affect the character of such use, or render it any the less public, within the meaning and scope

of the law of eminent domain." See, also, 29 C. J. S., Eminent Domain, § 97, p. 898.

Congress placed flood control projects in which the federal government participates under the jurisdiction of the Department of the Army and the supervision of the Chief of Engineers. 33 U. S. C. A., § 701b, p. 216. It is provided that no money shall be appropriated for such a local control project unless the city or local agency involved shall give assurance to the Secretary of the Army that it will provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, bind itself to hold and save the United States free from damages due to the construction works, and maintain and operate all the works after the completion as the Secretary of the Army shall prescribe. 33 U. S. C. A., § 701c, p. 219. The record disputes the contention of appellants that the flood control project for Seward was a private and not a public project. The foregoing definitely establishes the project as a public one.

The project was completed and it was accepted by the city on October 1, 1953, for operation and maintenance, a resolution of the city to that effect was adopted on December 1, 1953, and shortly thereafter the operation and maintenance manual prepared by the Army Engineers containing regulations to be followed in the maintenance and operation of the project was furnished the city.

The city of Seward, a city of the second class, was authorized by the state: To establish and alter the channel of watercourses and to erect and maintain a dike or dikes as protection against flood or surface waters. § 17-529, R. R. S. 1943. To acquire a right-of-way over real estate by exercise of the power of eminent domain for the purpose of constructing a ditch and dike to prevent flooding of the city subject to the condition that the city should be liable for land taken and consequential damages to other lands injured by the improvement

and to annually levy a tax on the taxable, tangible property in the city to assist in defraying the cost of construction or maintenance of the flood control ditch and dike. § 17-529.01, R. R. S. 1943. To acquire by purchase or by gift necessary lands, rights-of-way, and easements required for a flood control project. §§ 23-320.02, 23-320.07, R. R. S. 1943. To enter into agreements with the United States in order to secure federal aid, obligating the city to provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, keeping the United States free from damages due to the project, and maintain and operate it as provided and required by federal regulations. § 17-529.02, R. R. S. 1943. The pertinent legislation also makes it the duty of the city to keep such flood control works in serviceable condition and to make necessary repairs thereof. § 23-320.07, R. R. S. 1943.

The improvement which appellants seek to have abated and because of which they claim permanent damages is a flood protection project constructed by authority of law, and accepted and maintained by the city of Seward. It is not claimed that any damages resulted to the property of appellants in the past from the existence of the improvement. The claim is permanent damages which they assert they will sustain by reason of the completed project which is a hazard to their property and the inevitable consequences of which will be to flood their land. Any such damages depend upon the existence and upon the effect of the project as it is maintained and operated by the city. Appellees may not be made liable for damages unless they have done or are doing a wrong to appellants causing them injury. It is not the acts which contributed to the construction of the project that have caused or will cause any injury but the completed works themselves can only cause appellants harm which might be the basis of a cause of action. The author says in 66 C. J. S., Nuisances, § 139,

p. 947: "In cases of damages by nuisance, the injurious consequences resulting from the nuisance, rather than acts which produce the nuisance, constitute the cause of action * * *. The hurt to plaintiff must come from the structure, qua nuisance, to give him a cause of action for maintaining it."

Appellants say the project was negligently constructed but they specify no acts of negligence. The term negligently constructed as used by them must be considered descriptive with the intention of saying that the building of the works in the manner described so as to impound and divert waters onto and flood their premises is negligence. The project was constructed as planned by the engineers of the United States Army and if it floods the lands of appellants it will not be because of negligence but because the project itself will inevitably cause such damages and that this result is inherent in the plan. Whether or not there was negligence in the building of the works is immaterial. It is the completed project which is in issue. If the property of appellants is damaged as claimed by them it results from a public use for which the city was liable by virtue of the constitutional provision that private property may not be taken or damaged for a public purpose without compensation. Art. 1, § 21, Constitution of Nebraska. Negligence or wrongful act is immaterial to such a liability.

In Wagner v. Loup River Public Power Dist., 150 Neb. 7, 33 N. W. 2d 300, an action to recover damages to riparian lands resulting from diversion of water by a public corporation, it is said: "Plaintiff's cause of action is based on article 1, section 21, of the Nebraska Constitution, which provides in substance that the property of no person shall be taken or damaged for public use without just compensation therefor. Proof of negligence or the commission of a wrongful act is not, therefore, necessary to a recovery." See, also, Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417.

Carroll v. Davis, 128 S. C. 40, 121 S. E. 601, considered

this situation: Plaintiff sued Davis, the county, and others for damages, alleging that the individual defendants had entered into a combination and conspiracy to induce and had succeeded in getting the county to open a road through the property of plaintiff for the benefit of Davis which resulted in injury and damage to her property. The trial court on demurrer dismissed the case as to all defendants except Davis and the county and plaintiff had a judgment on a verdict against them. The Supreme Court decided that the county only was liable under the condemnation statute. It said: "The demurrer of Davis should have been sustained. He was a private citizen, in no wise connected with the county. No overt act is alleged in the complaint which resulted in the injury complained of, but the complaint alleges that he induced the highway commission to open the road through plaintiff's land. The alleged wrongs alleged in the complaint against Davis do not give a cause of action against him. He did nothing that gave the plaintiff a cause of action against him. The alleged opposing causes of action were not those of Davis, but the acts of those clothed with authority and law to build roads in the county."

In Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738, the court discussed and cited numerous cases and then said: "The above cases are all against cities; none of them is against a county. But the logic of all of them is to the effect that the municipality which invades the right conferred upon the property owner by the Constitution must respond in damages therefor." See, also, Tidewater Constr. Corp. v. Manly, 194 Va. 836, 75 S. E. 2d 500; Yearsley v. Ross Constr. Co., 309 U. S. 18, 60 S. Ct. 413, 84 L. Ed. 554; Benner v. Atlantic Dredging Co., 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. S. R. 649; Coy v. City of Tulsa, 2 F. Supp. 411; Weaver v. Pennsylvania-Ohio Power & Light Co., *supra;* 29 C. J. S., Eminent Domain, § 195, p. 1095; 66 C. J. S., Nuisances, § 11c, p. 756.

A flood protection project of a municipality author-
ized by law could obstruct and divert water and cause
it to flow contrary to the natural course of drainage upon
and over the property of another to his damage. The
damage would be recoverable from the municipality if
timely established in a legal manner. But the project
being a public one which the municipality is bound to
maintain and operate could not be enjoined or abated.
The liability of the city would not extend to or be re-
coverable from persons who had consented to, encour-
aged its construction, or contributed to the cost thereof.
Appellees, not including the city, are not liable for the
existence, maintenance, or future operation of the pub-
lic flood control project of the city of Seward, the main-
tenance and operation of which are the right, obligation,
and responsibility of the city. This is true notwithstand-
ing the appellees consented to, approved, and contributed
to the construction of the project in accordance with the
plans prepared, adopted, and executed by the public
authorities.

The flood control project as planned by the Army En-
gineers was approved by the city of Seward by resolu-
tion of its council as early as June 19, 1951. A part of
it had then been constructed. A report of the engineers
detailed all work that was intended to be done to com-
plete the project. The city passed an ordinance which
was approved May 27, 1952, authorizing proceedings by
condemnation to acquire a right-of-way over the real
estate owned by appellants for the purpose of changing
the channel of a watercourse and to erect and maintain
dikes against flood and surface waters to protect the
city and its property from inundation. The ordinance
recited the necessity for the work proposed to be done
and authorized the payment of all damages sustained,
direct and consequential, by appellants on account there-
of. The real estate to be taken was precisely described.
Condemnation proceedings were instituted June 17, 1952,
more than a year after the project was approved by the

city and after negotiations with appellants for the right-of-way, as the city alleged, were unsuccessful. The right-of-way was required by the city to satisfy its obligation to the federal government to provide any right-of-way the project required.

Appellants appeared in the condemnation proceedings, filed an answer therein, and had opportunity of a hearing as to all they claimed because of the project. The answer made in the county court by them described the identical land owned by them as is described in the amended petition in this case and therein they pleaded that the purported flood control project consisted of dikes, dams, structures, and obstructions north of the city limits of Seward about 15 feet high across the natural watercourse that flows through the city, and that they divert all water that naturally flows in said natural water and flood channel and plane by causing it to back upon, impound upon, and stand on the flat land north of the obstructions including the land of appellants and that the dikes along the north part of the city will block off, dam, and hold back the whole east half of the Blue River flood channel and plane. The answer filed by appellants in the district court made substantially the same allegations as are made in the amended petition of appellants in this case. They asked to recover in the condemnation case the value of their land taken and consequential damages for injury to all their other property. It is definitely shown by the record that all damages for the taking of a part of their land and consequential damages to the balance thereof by reason of the project were fully contemplated, pleaded, and asked to be recovered in the condemnation case by appellants for the reasons that are stated as a basis for the recovery of permanent damages in this case.

There was an award made by the appraisers to appellants in the condemnation proceeding. They attempted an appeal in the matter to the district court but

it failed, and the appeal was dismissed. City of Seward v. Gruntorad, 158 Neb. 143, 62 N. W. 2d 537. The award of the appraisers became final and the amount of it was deposited with and left in the custody of the judge of the county court of Seward County. In Ehlers v. Chicago, B. & Q. R. R. Co., 118 Neb 477, 225 N. W. 468, it is said: " 'A landowner who fails to appeal from the freeholders' award in a condemnation proceeding, is conclusively bound by it.' " The award in the condemnation case is a final and conclusive adjudication of the amount of permanent damages appellants were entitled to receive and they have no right of recovery therefor in this case. Damages occasioned by the proper construction and future prudent and careful operation of the improvement may only be assessed and awarded to an adjoining proprietor in the condemnation proceeding by which a part of his property was taken for the improvement.

In Snyder v. Platte Valley Public Power & Irr. Dist., 140 Neb. 897, 2 N. W. 2d 327, it is said: "The final award in condemnation proceedings for the acquisition of a right of way is conclusive upon the parties thereto as to all matters necessarily within the issues joined, although not formally litigated. * * * For all injuries which may arise on account of the proper construction or future operation of an improvement, an adjoining proprietor must be compensated in the original condemnation proceedings. * * * In condemnation proceedings, the owner of property taken or damaged is entitled to have all proper elements of damage considered by the commissioners, and, if they fail to do so, he cannot afterwards maintain an action to recover damages thus omitted, which were necessarily involved in the issues in the condemnation proceedings." See, also, Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355; State v. County of Cheyenne, 157 Neb. 533, 60 N. W. 2d 593.

Appellants assert that the court was not authorized

to consider and decide the effect of the legal defenses pleaded by appellees at the time and in the manner it was done in this case. Appellants may not urge error in this regard. They consented to it and urged the court to follow the procedure that was adopted. It was done with the concurrence of all who participated in the litigation. It has often been said by this court that a litigant may not predicate error on any action of the court to which he consented or procured to be taken. Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367; Pierce v. Fontenelle, 156 Neb. 235, 55 N. W. 2d 658.

The judgment of dismissal involved in this appeal should be and it is affirmed.

AFFIRMED.