GRACE LAND & CATTLE COMPANY, A CORPORATION, ET AL., APPELLANTS, IMPLEADED WITH WYOMING-NEBRASKA PIPE LINE COMPANY, NOW CHEYENNE PIPE LINE COMPANY, A PARTNERSHIP, APPELLEE, V. TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., A COLORADO CORPORATION, APPELLEE.

217 N. W. 2d 184

Filed April 18, 1974. No. 39214.

Firmin Q. Feltz, for appellants.

Peetz & Dorwart, for appellee Tri-State G. & T. Assn., Inc.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and WHITE, District Judge.

CLINTON, J.

This is a proceeding in eminent domain. It was commenced by the filing of a petition in the county court of Garden County, Nebraska, requesting the appointment of appraisers. The petition described an easement for electrical transmission purposes to be condemned across two parcels of land not contiguous and described as Parcel 27 and Parcel 10.

Parcel 27 consisted of parts of Sections 5 and 6, Township 15 North, Range 42 West of the 6th P.M.; part of Section 31, Township 16 North, Range 42 West of the 6th P.M.; and parts of Sections 36, 25, and 24, Township 16 North, Range 43 West of the 6th P.M., all in Garden County, Nebraska.

Parcel 10 consisted of a part of Section 27, Township 14 North, Range 42 West of the 6th P.M., in Deuel County, Nebraska.

The petition described Grace Land & Cattle Company as the owner of both parcels. Connecticut Mutual Life Insurance Company was described as the mortgagee of Parcel 10. Cheyenne Pipe Line Company was joined as a party having some interest in Parcel 10, but the nature or extent of the interest was not set out in the petition.

The appraisers determined the damages to be $3,655 to Parcel 27 and $1,091.70 to Parcel 10. The return of the appraisers was filed on February 15, 1973, and a copy sent to the Grace Land & Cattle Company on that date. On February 20, 1973, the Grace Land &

Cattle Company and Connecticut Mutual Life Insurance Company filed a notice of appeal, bond, and proof of service of the notice of appeal on the condemner.

A petition on appeal and the transcript were filed in the District Court on February 21, 1973. A proof of service of the notice of appeal on Cheyenne Pipe Line Company on April 9, 1973, was filed in the county court on April 10, 1973. The condemner moved to dismiss the appeal for failure to serve the notice of appeal upon all parties bound by award within 30 days as required by section 76-715.01, R. R. S. 1943. The trial court sustained the motion and dismissed the action. From that order Grace Land & Cattle Company and Connecticut Mutual Life Insurance Company have appealed to this court.

The appellants present a number of contentions as to why the judgment should be reversed. We consider only two. We first discuss the contention that the failure to serve notice on Cheyenne Pipe Line Company within the required 30 days defeated the appeal. What does the term "all parties bound by the award" in section 76-715.01, R. R. S. 1943, mean? It seems clear to us on the basis of (1) the statutory provisions themselves, (2) authorities in point, including prior decisions of this court, and (3) elemental principles of real property law, that where there is more than one condemnee there are necessarily as many awards as there are condemnees. These awards are several as distinguished from joint.

A condemnee who does not appeal is bound by his award as it has the effect of a judgment if unappealed from. State ex rel. Katelman v. Fink, 84 Neb. 185, 120 N. W. 938; Gruntorad v. Hughes Bros., Inc., 161 Neb. 358, 73 N. W. 2d 700. We long ago held that the awards to the various condemnees are several and should be separately determined by the appraisers in their report.

State ex rel. Katelman v. Fink, *supra*. The proceedings in that case were, of course, under a different statute, but it was not materially different insofar as the point we are discussing is concerned. We there said: "The determination of this appeal rests upon the construction to be placed upon said section 7478. If it was the duty of the appraisers to ascertain the amount of the damage that would be sustained by each person having an interest in or a lien upon the land appropriated, it would follow that the report of the appraisers that relator was entitled to $3,000, less $13.52 for general tax unpaid, was the ascertainment of his damage by reason of taking the lot in question, and that, as there was no finding of a lien for the city for special assessments, it was equivalent to a finding that the city had no lien upon the lot." The court then discussed the statutes and previously decided cases and said: "From a consideration of the provisions of the statute above quoted, it would seem clear that it was the intention of the legislature to make it the duty of the appraisers to assess the damages to each and all of those interested in the premises, and to apportion the value of the property appropriated among all those having an interest therein according to their respective interest. If this were not the case, we see no reason for making all persons interested in the lot parties to the proceeding, nor why the right of appeal should be conferred upon other parties than the owners of the fee. From the holdings of the court above referred to, it is apparent that the right of lienors may be determined upon the appeal, and that they may have judgment for the amount of their liens. It would scarcely be contended that such a judgment could be rendered on appeal unless such findings should have been made and reported by the appraisers, for it is elementary that nothing can be heard upon the appeal that could not properly have been determined by the board or court from which

the appeal is taken. Our views are strengthened in this respect by the further fact that the right of appeal is made the exclusive remedy of those interested, and that no other method is provided by the statute for apportioning the value of the property taken among the various persons having an interest in or lien thereon. The respondents have placed the same construction upon the statute, for it appears that in this condemnation proceeding the appraisers in the appraisal of other property did determine and award to different persons having an interest in the property and liens thereon the exact amount of their interest and liens."

An identical result was reached in the case of Omaha Bridge & Terminal Ry. Co. v. Reed, 69 Neb. 514, 96 N. W. 276. We quote from that opinion: "Upon the trial of this case in the district court, it was, in effect, determined that the mortgagees' interest in the land equaled or exceeded the damages assessed by the jury. In other words, the mortgagees, claiming to be owners within the meaning of the statute, presented their claim to the district court for adjudication. They asserted and proved that they were owners, and that the value of their ownership was, at least, equal to the amount named in the verdict. The Omaha Bridge & Terminal Company had been duly summoned; it was in court and had ample opportunity to controvert and disprove the mortgagees' claim. It knew the issue presented for trial was the value of the mortgage lien, and if it was of opinion that the presence of the owner of the fee was necessary for the protection of its rights, it was its privilege to have him brought in. It failed to have him brought in; in effect, it consented to have the issue tried and determined without him; and it must now abide by the result. Chicago, K. & N. R. Co. v. Ellis, 52 Kan. 41; Washburn v. Milwaukee & L. W. R. Co., 59 Wis. 379."

We have recognized the principles enunciated as re-

cently as Jackman v. Tri-State G. & T. Assn., Inc., 181 Neb. 459, 149 N. W. 2d 43. This was a case in which awards were made to the landowner and his tenant. The landowner appealed. The tenant was satisfied and took his money. In determining the question of whether the landlord's appeal took along with him the tenant as an appellee, we said: "Did the appeal of the plaintiffs Jackman bring up the cause to the district court as regards the plaintiff Martin Mahnken? The record in this action reveals that separate awards were made by the appraisers to the owners of the land and to the tenant Martin Mahnken, who found the award satisfactory and did not appeal therefrom. It is apparent that the interest of the plaintiffs Jackman and of the plaintiff Mahnken are not inseparably connected. Where the parties have separate interests, one may appeal without joining the others, the case under such circumstances not being brought up on appeal as to such other parties."

What we have said conforms to the rules generally applicable. We quote from 30 C. J. S., Eminent Domain, § 356, p. 320: "It is not necessary that tenants in common of the premises who appeal name as parties to the appeal those tenants in common who do not appeal. Tenants in common may join in an appeal, but parties having separate interests cannot. Each owner of a separate interest or tract has the right of appeal with reference to such interest, and an appeal by one owner cannot affect the rights of others who are joined with him in the original proceeding. Thus if a mortgagee is a party to the proceedings he has a right of appeal independently of the owner of the fee; and on such appeal the condemnor may bring in the landowner in order that it may be fully protected. A life tenant may appeal from an award to him as owner without joining the owner of the reversion."

Let us now examine the statutory provisions. The

term condemnee is used in the singular throughout Chapter 76, article 7, R. R. S. 1943. Section 76-701, R. R. S. 1943, defines condemnee in the following language: "Condemnee means any person, partnership, corporation, or association, owning or having *an encumbrance on any interest* in property that is sought to be acquired by a condemner, *or in possession of or occupying* any such property." (Emphasis supplied.) Section 76-704, R. R. S. 1943, says: "If any condemnee shall fail to agree with the condemner," then the condemner may file a petition to condemn. It is clear that the language of the statute recognizes the obvious fact that more than one condemnee may have an interest in real estate affected by the proceedings and that these interests are separate and may be different in nature and so are to be severally treated. The very right of condemnation depends upon the failure of the condemner to agree with the condemnee with reference to the acquisition. Even though two or more condemnees may have an interest, if the condemner and one condemnee agree the interests of the other condemnees who do not agree may be acquired by eminent domain.

Other sections of the statute reinforce our conclusions. It is the duty of the appraisers to hear "any party interested therein." § 76-709, R. R. S. 1943. The appraisers "shall assess the damages that the condemnee has sustained." § 76-710, R. R. S. 1943. Section 76-710.01, R. S. Supp., 1972, provides for the payment of obligations of the property on account of obligations it bears to subdivisions of government. It is clear that some condemnees may accept their awards and others may appeal. See, §§ 76-711, 76-715.01, 76-716, 76-717, 76-719.01, R. R. S. 1943.

It is true that section 76-710, R. R. S. 1943, provides: "[W]here title or interest in a single parcel of land is held by several condemnees the transmission of such copy to any one of such owners of interest" is com-

pliance with the requirement that the county judge mail a copy of the award to the condemnees. This is an anomalous provision in the statute but it does not have anything whatever to do with the question of upon whom notices of appeal must be served.

It is, of course, possible that there may be situations where the interests of two or more condemnees are so intertwined that even as between themselves those two or more are proper parties on appeal. Omaha Bridge & Terminal Ry. Co. v. Reed, *supra*, presents such an example.

We hold that the term "parties bound by the award" means the person whose award is being appealed. If the condemner is the appealing party, he must cause the required notices to be served on the condemnee or condemnees from the award in favor of whom he desires to appeal. If a condemnee appeals he need serve only the condemner.

For the foregoing reasons the court erred in dismissing the appeal.

There is another reason why the judgment must be reversed. Cheyenne Pipe Line Company had no interest in Parcel 27, the Garden County land. Parcel 10 was located in Deuel County. No part of Parcel 10 was located in Garden County. If the proceedings were void so far as Parcel 10 was concerned, it is of no importance whether a notice of appeal was served on Cheyenne Pipe Line Company.

Condemnation proceedings are local in nature. We have long recognized that the question of determination of the damages sustained by a landowner because of the taking of a right-of-way across his land is peculiarly of a local nature and should be determined by a jury of the county where the land is situated. The statutory provision which permits a petition to condemn to be filed in the county court of the county where "some part" of the property is situated has ref-

erence to a contiguous tract which extends across the county line. See, 27 Am. Jur. 2d, Eminent Domain, § 382, p. 248; 29A C. J. S., Eminent Domain, § 233, p. 1052; 6 Nichols on Eminent Domain (3d Ed.), § 24.7, pp. 24-215 to 24-220; Toluca, M. & N. Ry. Co. v. Haws, 194 Ill. 92, 62 N. E. 312.

The judgment of the District Court is reversed and the cause remanded. The appeal as to Parcel 27 shall be heard. The original proceedings as to Parcel 10 are patently void and the District Court for Garden County could acquire no jurisdiction. That portion of the appeal was properly dismissed. The remedy as to the tract there involved lies in further proceedings.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting in part.

I concur in the holding that the proceedings in Garden County were void as to Parcel 10 which was located entirely in Deuel County. I do not agree that Cheyenne Pipe Line Company was not a party "bound by the award."

The petition to condemn furnished no basis upon which the appraisers could make separate awards as to each of the parties interested in Parcel 10. In the event there was no appeal from the award of the appraisers, and the proceedings were otherwise valid, there would be no way in which the award could be divided without further litigation unless the parties to the award were all in agreement.

Where the awards are in fact several, then the authorities cited in the opinion of the court such as the Jackman case are applicable. Where there is in fact a single award to one or more parties it seems to me that each party to the award is a "party bound by the award." In the event of an appeal by any party to such an award, the other parties to that award should be joined in the proceedings in the District Court.

WHITE, C. J., and SPENCER, J., concur in this dissent.